JOHNSON, J.
11 This is a domestic case in which Defendant appeals various rulings of the trial, court involving temporary restraining orders, a motion to recuse, pauper status, and a judgment addressing several domestic issues including a protective order based on a finding that Defendant was stalking Plaintiff, the suspension of co-parenting guidelines, the denial of Defendant’s request to sell the family home, and the award of attorney fees to Plaintiff and *669 assessment of costs against Defendant. For the following reasons, we affirm.

FACTS & PROCEDURAL HISTORY

The parties were married in September 2003 and had two children, D.L. and A.L., born 2005 and 2007 respectively. On September 22, 2015, Mindy Lepine filed for divorce from Troy Lepine under La. C.C. art. 102. In her petition, she requested the parties be awarded joint custody of the minor children with her being designated as the domiciliary parent, and that she be awarded child support, interim periodic spousal support, exclusive use of the family home, ■ and other incidental requests. On October 13, 2015, Mindy filed a supplemental petition for divorce requesting that Troy undergo anger management assessment and possible counseling so he could better parent the children.
On November 19, 2015, the parties appeared before Hearing Officer Paul Fias-conaro and entered into a consent agreement wherein they agreed to joint custody of the children with Mindy as the domiciliary parent, that Troy should have unsupervised physical custody every other weekend, that they both attend parenting classes, that Troy would pay interim child support in the amount of $517.00/month, and that Mindy would have interim use and occupancy of the family home as well as the 2011 Toyota Sequoia. The parties also agreed to comply with specified co-parenting guidelines. Mindy further agreed to forego her request for interim periodic spousal’ support. This consent agreement was ^subsequently signed by Domestic Commissioner Ruben Bailey and made a consent judgment of the court,
A little over one month later, on December 29, 2015, Mindy filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction pursuant to La. C.C.P. art. 3601, et seq., based on an incident that occurred on December 26, 2015, when Troy allegedly came to her home uninvited and tried to enter through the garage door after calling and texting her in a derogatory manner beginning at 1:00 a.m. She stated that she called the police as a result of the incident-and attached a copy of the Jefferson Parish Sheriffs Office’s item/complaint number. Mindy further alleged that Troy previously made harassing phone calls to her on December 24th. Commissioner Bailey denied Mindy’s request for an ex parte temporary restraining order (TRO) and set the matter for a January 19,2016 hearing.
The January 19, 2016 hearing was subsequently continued to February 22, 2016 at Mindy’s counsel’s request. On that same date, Mindy filed a second request for an injunction. Commissioner Bailey denied an ex parte TRO and set the matter for February 22nd.
The parties appeared before Commissioner Bailey on February 22, 2016.[1] After a hearing, Commissioner Bailey granted Mindy’s request for an injunction against Troy, specifically ordering him not to ha- ■ rass Mindy or the children. The injunction was effective until February 22, 2017.
• Thereafter, on April 29, 2016, Mindy filed a Petition for Protection from Abuse pursuant to La. R.S. 46:2131, et seq., alleging Troy was stalking her; She sought an ex parte TRO to prohibit Troy from harassing and stalking her.’ She also requested authority to move all of the property and equipment of the community business from the family home to a storage unit. On the same date, Mindy filed a [¡¡Rule to Show Cause why Troy should not be held in contempt of court for violating the February 22, 2016 injunction. Commissioner *670 Bailey denied an ex parte TRO and set both matters for a hearing on May 19, 2016.
Subsequently, on May 9, 2016, Mindy filed an objection to Commissioner Bailey’s denial, of her request for a TRO and requested consideration of the issue by the district court judge. On that same date, Judge John Molaison signed an ex parte order granting a TRO against Troy prohibiting him from contacting Mindy through phone, text, or email, and from going near her or her home, except in regards to the children’s events and only with Mindy’s written permission. The order also required any communication regarding the children be directed to Mindy through Our Family Wizard. Finally, the order granted Mindy’s request to move the business equipment to a storage facility.
The next day, on May 10, 2016, counsel for Troy enrolled and filed an answer to the petition for divorce and reconventional demand for incidental matters. Judge Mo-laison recused himself from the case on May 11, 2016 because he was related to Troy’s newly enrolled counsel, and the case was re-allotted to Judge Danyelle Taylor. On May 12, 2016, Mindy sought another TRO on the basis of domestic abuse, which Judge Taylor granted through May 19, 2016, the scheduled date of a hearing before Commissioner Bailey regarding Mindy’s petition for protection from abuse and contempt rule. When the parties appeared before Commissioner Bailey on May 19th, the parties advised him that the issues were going to be heard by Judge Taylor on May 24, 2016. On that same date, Mindy filed a request for a TRO, essentially seeking to extend the earlier TRO through the May 24th hearing date, which was granted by Commissioner Bailey.
The parties appeared before Judge Taylor on May 24, 2016. At that time, all pending matters, including the petition for protection from abuse and rule for contempt, were continued by consent of the parties until June 24, 2016. |4Additionally, Judge Taylor extended the TRO against Troy through the next hearing date of June 24th.
On June 24, 2016, Judge Taylor held a hearing on Mindy’s petition for abuse, rule for contempt, and several other issues, including Troy’s petition to partition co-owned property and Mindy’s motion for costs. The matter did not fully conclude and the hearing was held open and continued to July 26, 2016, with the temporary injunction remaining in effect until then,
In the interim, on July 14, 2016, Mindy filed a second rule to show cause why Troy should not be held in contempt of court for violating the TRO that was in effect from June 24-July 26, 2016. On the same day, Mindy filed a supplemental and amending petition for protection from abuse alleging that Troy’s abusive behavior had escalated. Mindy requested that all visitation and phone calls between Troy and the children be suspended until the July 26th hearing. Judge Glen Ansardi, who was the duty judge, granted a TRO on July 15th, ordering Troy not to contact Mindy except regarding the children and community property and only through Our Family Wizard; however, the TRO did not address visitation or the nightly phone calls. Three days later, on July 18, 2016, Mindy filed another request for a TRO, which Judge Taylor granted specifically prohibiting Troy from any contact with Mindy and the children and suspending all visitation and phone calls between Troy and the children until the July 26th hearing.
On July 26, 2016, prior to the scheduled hearing, Troy filed a motion to recuse Judge Taylor on the basis of alleged impropriety in Judge Taylor’s TRO dated July 18, 2016. Specifically, Troy challenged *671 Judge Taylor’s impartiality in suspending Troy’s visitation and phone calls with his children when the duty judge, Judge An-sardi, had not deemed it necessary three days earlier when he granted Mindy’s request for a TRO. Judge Taylor denied the motion on the basis it failed to state a ground for recusal or allege any facts supporting a ground for ^recusal, and that it was untimely. Thereafter, Judge Taylor proceeded with the scheduled hearing. Again, the matter did not conclude and the hearing was held open and continued to July 29, 2016. Judge Taylor ordered that the temporary injunction was to remain in effect until the new hearing date.
On July 29,2016, the hearing on Mindy’s petition for protection from abuse and other matters resumed. At the conclusion of the hearing, the trial court found that Troy was guilty of domestic abuse by stalking and granted a protective order for 12 months, suspended the co-parenting guidelines, ordered Troy to undergo anger management classes, a psychiatric evaluation and counseling, and found Troy in contempt of court for violation of the injunction against harassment. The trial court ordered Troy to pay $1,000 in attorney fees plus court costs in connection with the contempt of court finding related to harassment and $4,000 in attorney fees plus court costs in connection with. the protective order. It further denied Troy’s request to list the family home for sale. The trial court signed a written judgment to this effect on September 23, 2016.[2] Troy timely filed a motion for devolutive appeal.[3]

ISSUES

Troy raises numerous issues on appeal. He first challenges the ex parte TRO issued by Judge Molaison on May 9, 2016. Next, he argues Judge Taylor erred in the following regards: (1) “rubber stamping” Judge Molaison’s May 9, 2016 ex parte TRO and expanding it; (2) granting an ex parte TRO on July 18, 2016 when the duty judge had denied relief one business day earlier; (3) granting pauper status to Mindy; and (4) denying his motion to recuse. Finally, Troy challenges several parts of the September 23, 2016 judgment; specifically, (1) finding his actions constituted stalking for purposes of a protective order under the ^domestic abuse statutes; (2) suspension of the co-parenting guidelines; (3) the denial of his request to sell the family home; (4) awarding attorney fees to Mindy in the amount of $6,000; and (5) assessing all court costs against him.

DISCUSSION

Temporary Restraining Orders
On appeal, Troy challenges several TROs that were issued throughout this case. First, he argues Judge Molaison abused his discretion in granting the May 9, 2016 TRO because it was untimely and unsubstantiated, thereby violating his due process rights. Troy contends Judge Mo-laison did not have jurisdiction to issue the TRO because Mindy failed to timely object to Commissioner Bailey’s denial of the TRO. Specifically, Troy asserts that Mindy’s objection was filed ten days after Commissioner Bailey denied the TRO in violation of the three-day time period under La. R.S. 13:717(F)(4)(b). He further asserts Judge Molaison should have had a hearing to provide him the opportunity to appear and present his side of the story, *672 especially in light of the fact Mindy’s request for a TRO was not substantiated with the proper affidavit.
Second, Troy challenges a TRO issued by Judge Taylor, on the basis she simply “rubber stamped” the TRO issued by Judge Molaison and expanded it by awarding sole custody of the' children to Mindy in violation of his constitutional rights. Although Troy does not specifically identify this TRO by date, it appears he is challenging the TRO signed by Judge Taylor on May 12, 2016.
Finally, Troy asserts Judge Taylor abused her discretion in granting a TRO on July 18, 2016, after another judge, denied the same-relief only one business day earlier.
We do not find any of these issues are properly before this Court on appeal. Under La. C.C.P. art. 3612, “[tjhere shall be no appeal from an order relating to a temporary restraining order.” We find this prohibition applies to all TROs, ^regardless of whether the TRO was granted under La. C.C.P. art. 3603 or the Domestic Abuse. Statute, La. R.S. 46:2135. In the event - a party is aggrieved by the granting of a TRO, that party may seek review by way of an- application for supervisory writs to the Court of Appeal, which we note that Troy did not do as to any of the TROs issued in this case. See Harper v. Harper, 00-1425 (La. App. 5 Cir. 1/30/01); 777 So.2d 1275, 1278, writ denied, 01-768 (La. 5/11/01); 792 So.2d 736. Based on the posture of this case,'all three of the challenged TROs have lapsed and have been rendered moot by the issuance of the September 23, 2016 judgment, which issued a protective order and modified visitation. See id.
Granting of Pauper Status
Troy - next argues that the trial court abused its discretion in granting pauper status to Mindy. He contends that Mindy’s assets and income exceeded the eligibility-of pauper status at the time it was granted.
The law provides a procedure for one who cannot afford to pay court costs to prosecute or defend litigation without having to pay court costs in advance or as they accrue. See La. C.C.P. art. 5181, et seq. Pauper status, or the ability to litigate without prior payment of costs is a privilege, not a right, and one seeking to take advantage 'of this privilege must clearly be entitled to it, must apply for permission to do so, and must submit specific documentation. Thibodeaux v. Rental Ins. Servs., 13-1947, *34 (La. App. 1 Cir. 4/24/15), 2015 WL 1882456, 2015 La. App. Unpub. LEXIS 170, writ denied, 15-1213 (La. 9/25/15); 178 So.3d 567. The grant of this privilege to litigate in forma pauperis is within the trial court’s discretion. Gebre v. City of New Orleans, 14-904 (La. App. 4 Cir. 10/7/15); 177 So.3d 723, 732. An adverse party may traverse a litigant’s status as a pauper by a rule to show cause, and the trial court shall rescind its order of pauper status if it finds tlae litigant is not entitled to exercise the privilege. La. C.C.P. art. 5184.
IsThe trial court granted Mindy pauper status on June 29, 2016. There is nothing in the record that shows Troy availed himself of the opportunity under La. C.C.P. art. 5184 to traverse Mindy’s ability, to litigate as a pauper.[4] Rather, Troy seeks to *673 challenge Mindy’s pauper status for the first time in this appeal.
As a general rule, appellate courts will not consider issues raised for the- first time on appeal, which are not pleaded in the court below and which the trial court has not addressed. First Bank & Trust v. Treme, 13-168 (La. App. 5 Cir. 10/30/13); 129 So.3d 605, 610. Because Troy did not present this issue to the trial court for review, he is precluded from having this Court consider the merits of this issue.[5]
Denial of Motion to Recuse
Troy asserts that Judge Taylor abused her discretion when she failed to recuse herself when valid grounds for a recusal'were set forth in his motion to recuse.
Troy filed a motion to recuse Judge Taylor on July 26, 2016, the second day of trial, on the basis that “some impropriety seem[s] to exist, even if they [sic] do not actually exist.” He relied on the fact that Judge Taylor granted a TRO suspending Troy’s visitation and nightly phone calls with his 'Children on July 18, 2016, after Judge Ansardi denied the same relief on July 15, 2016 based on identical pleadings'. He further alleged that Judge Taylor and Mindy’s counsel were two presenters at a CLE on domestic abuse. Troy asserted that he “questioned] the issue of blind justice” in light of the fact Commissioner Bailey and Judge Ansardi previously denied ex parte TROs to remove custody of the children from their father. In requesting that Judge Taylor recuse herself, Troy Instated, “The current situation may be completely innocent; however, a review of the record is disturbing. No disrespect in any fashion is directed toward Judge Taylor who has tried to be helpful to all sides.” On the . same day, Judge Taylor denied the motion, stating that the motion failed to state a ground for recusal or allege any facts supporting a ground for recusal under La. C.C.P. art. 151. Judge Taylor further found the motion to be untimely under La. C.C.P. art. 154.
Louisiana Code of Civil Procedure Article 151(A)(4) states that a judge of any court shall be. recused when he “[is] biased, prejudiced, or interested in the cause or its outcome, or biased or prejudiced toward or against the parties or the parties’ attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.” A judge is presumed to be impartial. Couvillion v. Couvillion, 00-143 (La. App, 5 Cir. 9/26/00); 769 So.2d 747, 753, writ denied, 00-3185 (La. 1/12/01); 781 So.2d 562. Article 151 requires actual bias or prejudice— “substantial appearance of the possibility of bias” or the “mere appearance of impropriety” is insufficient to remove a judge from presiding in a given action. S. Casing of La., Inc. v. Houma Avionics, Inc., 00-1930 (La. App. 1 Cir. 9/28/01); 809 So.2d 1040, 1050. Additionally, the bias or prejudice must be of a substantial nature and based on more than conclusory allegations. Lozier v. Estate of Elmer, 10-754 (La. App. 5 Cir. 2/15/11); 64 So.3d 237, 243, writ denied, 11-529 (La. 4/25/11); 62 So.3d 93.
If a valid ground for recusal- is set forth in the motion to recuse, the judge shall recuse, himself or refer the motion to another judge for a hearing. La. C.C.P. art. 154. However, when the motion to *674 recuse fails to enunciate valid grounds for recusal, the trial judge may deny the motion without referring the matter to another judge. Lozier, supra. A trial court has discretion to determine if there is a valid ground for recusal set forth in the motion. Frierson v. Frierson, 14-64, *32 (La. App. 4 Cir. 7/2/14); , 2014 WL 3045068, 2014 La. App. Unpub. LEXIS 399, writ denied, 14-1628 (La. 8/22/14); 146 So.3d 540.
Upon review, we find Troy failed to allege a valid ground for recusal in his motion to recuse. Troy only alleged that “some impropriety seem[s] to exist.” He further acknowledged that the trial court’s rulings “may be completely innocent” and that Judge Taylor “has tried to be helpful to all sides.” Thus, the motion fails to allege actual bias, prejudice or impropriety. Further, the mere allegation that Judge Taylor, who had been presiding over the case for two months and who had already heard one day of testimony regarding a request for a protective order, granted a more restrictive TRO than a duty judge is insufficient to warrant a recusal in this matter. Complaints of adverse rulings alone are insufficient to establish bias to recuse a trial judge. Fñer-son, supra. Accordingly, we find no abuse of the trial court’s discretion in denying the motion to recuse on the basis it failed to set forth a valid ground for recusal.
Domestic Abuse Stalking
Troy challenges the trial court’s finding that he committed domestic abuse by stalking on the basis of insufficient proof. He contends the trial court based its determination on unauthenticated evidence, namely screenshots of text messages between the parties. He further maintains that all of the interaction between the parties was invited by Mindy and, thus, there was no evidence he stalked her.
The Domestic Abuse Assistance Law. La. R.S. 46:2131, et seq., provides protection in the form of TROs and protective orders for persons subject to domestic abuse. Coy v. Coy, 46,655 (La. App. 2 Cir. 7/13/11); 69 So.3d 1270, 1272. Domestic abuse is not limited to physical or sexual abuse, but includes any offense against the person, physical or non-physical, as defined in the Louisiana Criminal Code, except negligent injury and defamation, committed by one family | nmember, household member, or dating partner, against another. La. R.S. 46:2132(A)(3).
Under the Domestic Abuse Assistance law, the trial court may grant a protective order directing the defendant from “abusing, harassing, or interfering with” the petitioning party. La. R.S. 46:2135(A)(1); La. R.S. 46:2136(A)(1). To obtain a protective order under this law, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B); Ferrand v. Ferrand, 16-7, *84 (La. App. 5 Cir. 8/31/16), 221 So.3d 909, 2016 WL 9022452 [2016 La. App. LEXIS 1600], writ denied, 16-1903 (La. 12/16/16); 211 So.3d 1164. Proof by preponderance of the evidence is when the entirety of the evidence shows that the fact sought to be proved is more probable than not. Shaw v. Young, 15-974 (La. App. 4 Cir. 8/17/16); 199 So.3d 1180, 1183.
A trial court’s decision to issue or deny a protective order under this law is reversible only upon a showing of an abuse of discretion. Ferrand, supra at *85. The trial court’s finding of fact, including its assessment of the weight of the evidence and the credibility of witnesses, may not be set aside absent manifest error. Shaw, supra. To reverse a fact-finder’s determination, the appellate court must find from the record that a reasonable *675 factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Rabalais v. Nash, 06-999 (La. 3/9/07); 952 So.2d 653, 657. Where the fact-finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that it would have weighed the evidence differently and reached a different' result. Id.
After a three-day contradictory hearing, the trial court granted a protective order in favor of Mindy against Troy “prohibiting domestic abuse stalking.” In its ruling, the trial court found Troy committed domestic abuse by violating an offense against the person, specifically stalking under La. R.S. 14:40.2. Because stalking | iais an offense against the person in the Louisiana Criminal Code, it constitutes domestic abuse for purposes of the Domestic Abuse Assistance Law.
Stalking is defined in La. R.S. 14:40.2(A) as “the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress.” The term “harassing” is defined as “the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.” La, R.S. 14:40.2(0(1). A “pattern of conduct” is “a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person.” La. R.S. 14:40.2(0(2).
In ruling, the trial court stated, after listening to lengthy recorded conversations between the parties, that any reasonable person would be expected to experience emotional distress based on the tone and substance of the conversations. The trial court noted that Troy’s language during the recorded conversations was “vial,” “abusive,” and “threatening.” After considering all the evidence presented, the trial court concluded Troy’s conduct constituted harassment because it was “repeated and unending” and constituted stalking because it would cause any reasonable person to suffer emotional distress.
We need not decide whether a criminal conviction for stalking could be sustained under these facts; rather, we need only decide whether Mindy satisfied her burden of proving her allegations of domestic abuse by a preponderance of the evidence. Upon careful review of the entirety of the record, we find the evidence supports the trial court’s determination that Troy’s conduct, including repeated text messages sometimes exceeding one hundred in one day,[6] phone calls that | lssometimes exceeded twenty-five in one day, and numerous Our Family Wizard messages that were unrelated to the children, as well as the content and tone of the recordings introduced into evidence, rose to the level of harassment that would cause a reasonable person alarm or emotional distress. Although Mindy responded to some of Troy’s texts, we cannot say tjie trial court was clearly wrong in its conclusion that the repeated texts and phone calls were uninvited. The record shows that Mindy repeatedly told Troy “this has to stop.” Accordingly, we cannot say the trial court’s finding that Troy committed domestic *676 abuse by stalking was manifestly erroneous or clearly wrong.
Suspension of Co-Parenting Guidelines
■ In this assignment of error, Troy contends that the trial court abused its discretion when it suspended the co-parenting guidelines. The only argument he makes in support of his contention is that the July 18, 2016 ex parte TRO denied him access to his children and violated his due process rights. We have already found that any issue pertaining'to the propriety of a TRO cannot be considered on appeal. Nonetheless, we will review the propriety of the suspension of the co-parenting guidelines.
The record shows that the September 23, 2016 judgment suspended the co-parenting guidelines that the parties agreed to in a consent judgment signed by Commissioner Bailey on November 19, 2015. In addition to suspending the co-parenting guidelines, the trial court ordered. Troy to participate in anger management and undergo psychiatric evaluation and treatment. It further modified Troy’s visitation, providing for supervised visitation for 60 days followed by limited unsupervised visitation, and set the matter for December 5, 2016 to review the visitation.
| úChild custody matters are reviewed under the abuse of discretion standard. The determination of the trial judge in a child custody matter is entitled to great weight and his discretion will not be disturbed on appeal absent a clear showing of abuse. McFall v. McFall, 10-1041 (La. App. 5 Cir. 9/13/11); 75 So.3d 30, 39-40.
■ Every child custody case must be viewed based on its own particular facts and relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Wilson v. Wilson, 15-74 (La. App. 5 Cir. 4/29/15); 170 So.3d 340, 344. The Louisiana Supreme Court has explained:
The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child’s emotional, physical, material and social well-being and health which are the judge’s very purpose in child custody cases. He must protect the child from the harsh realities of the parents’ often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child’s interests. ■ ■ . . .
In furtherance of this important goal, the court has been vested with broad and independent powers. It may, for example, order that an investigation be conducted into the home lives of the parties, the psychological health of the child, or into any other factor which the judge deems to be important in his determination of the child’s best interest. In this way, the court "can fulfill its obligations to the child.
C.M.J. v. L.M.C., 14-1119 (La. 10/15/14); 156 So.3d 16, 28-29, quoting Turner v. Turner, 455 So.2d 1374, 1378 (La. 1984).
Additionally, under the Domestic Abuse Assistance Law, La. R.S. 46:2131, et seq., the trial court has wide latitude in determining the relief granted to a domestic abuse petitioner to stop the abuse of a party. Rodriguez v. Claassen, 16-610 (La. App. 4 Cir. 12/21/16); 207 So.3d 490, 499. The purpose of the Domestic Abuse Assistance Law is to provide relief to victims of domestic violence by establishing a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection. La. R.S. 46:2131.
The co-parenting guidelines help to facilitate communication between" the parents regarding the children. Since the trial *677 court determined that Troy |1Bcommitted domestic abuse, which we.affirmed supra, it suspended the co-parenting guidelines to help stop the abuse by limiting the contact between the parents. Upon review, we find no abuse of the trial court’s discretion in this regard. Said relief is within the trial court’s authority under La. R.S. 46:2131, et seq., and consistent with the best interest of the children to be protected from the parents’ highly emotional conflict that tends to arise from their interaction.
Denial of Request to Sell Family Home
Troy contends the trial court erred in refusing to allow him to list the family home for sale as part of the partition of community property. In support of his argument, he cites La. C.C. art. 807, which provides in pertinent part, “No one may be compelled to hold a thing in indivi-sión with another unless the contrary has been provided by law or juridical act.” [Emphasis added.]
Under the Domestic Abuse Assistance Law, the trial court is authorized to protect the petitioning party against further abuse by granting the petitioner possession of the residence to the exclusion of the defendant even where the residence is jointly owned by the petitioner and the defendant. La. R.S. 46:2135(A)(3) and La. R.S. 46:2136(A)(1).
Under the previous consent judgment, Mindy had been granted interim exclusive use of the family home. In his answer and reconventional demand, Troy requested that the family home be immediately listed for sale. The request was heard during the three-day hearing on Mindy’s petition for protective order and denied. Under the Domestic Abuse Assistance Law, the trial court had authority to keep Mindy in possession of the co-owned family home in connection with the protective order. Accordingly, we find no error in the trial court’s ruling denying Troy’s request to list the family home for sale at this time.[7] [jgAttorney’s Fees and Costs
In his last assignment of error, Troy argues the trial court erred in awarding attorney fees to Mindy in the total amount of $5,000 and assessing all court costs against him. His 'sole argument is that Mindy’s pauper status led her to file excessive material into the record “at his expense.”
The trial court awarded $4,000 in attorney fees related to the petition for protective from abuse and $1,000 in attorney fees related to the contempt proceeding for violation of the injunction against harassment. The trial court also assessed all court costs related to the petition for protection from abuse and the rule for contempt against Troy.[8]
Contrary to Troy’s argument, Mindy’s pauper status had no bearing on the party responsible for court costs in this case. Under La. R.S. 46:2134(F), a petitioner for protection from domestic abuse
shall not be required to prepay or be cast with court costs or costs of service or subpoena for the filing of the petition or the issuance of á temporary restraining order or protective order pursuant to this Part, and the clerk of court shall immediately file and process the petition and temporary restraining order issued pursuant to this Part, regardless of the *678 ability of the petitioner to pay court costs. [Emphasis added.]
Additionally,. La. R.S. 46:2136.1(A) provides in pertinent part:
All court costs, attorney fees, costs of enforcement and modifications proceedings, costs of appeals, evaluation fees, and expert witness fees incurred in maintaining and defending any proceeding concerning domestic abuse assistance in accordance with the provisions of this Part shall be paid by the perpetrator of the domestic violence....
La. R.S. 46:2136.1 is very clear—all attorney fees and court costs incurred in maintaining and defending a proceeding concerning domestic abuse assistance are to be paid by the perpetrator, which in this case is Troy. Thus, the assessment |17of court costs related to the petition for protection from abuse was mandated by law.[9]
Under Louisiana law, attorney fees are allowed only where authorized by special statute or by contract. Dazet Mortgage Solutions LLC v. Faia, 12-486 (La. App. 5 Cir. 4/10/13); 116 So.3d 711, 719, writ denied, 13-1046 (La. 6/21/13); 118 So.3d 1095. La. R.S. 46:2136.1 clearly allows for attorney fees. During the three-day hearing, Mindy testified that she had incurred $8,065 in attorney fees through the time of her testimony, and a detailed invoice showing the attorney fees was admitted into evidence. Under the clear wording of La. R.S. 46:2136.1, Mindy was entitled to the entirety of her attorney fees relating to the petition for protection from abuse; however, she was only awarded $4,000.[10]
The trial court’s award of attorney fees should not be modified absent an abuse of discretion. D.M.S. v. I.D.S., 14-364, *41 (La. App. 4 Cir. 3/4/15); 225 So.3d 1127, 2015 WL 926777 [2015 La. App. LEXIS 436], writ denied, 15-897 (La. 6/19/15); 172 So.3d 654. Considering the three-day hearing and the amount of evidence presented, we find no abuse of the trial court’s discretion regarding the $4,000 award of attorney fees relating to the petition for protection from abuse.
Additionally, as to the $1,000 attorney fees awarded in connection to the contempt of court proceeding, we find no error. Under La. R.S. 13:4611(l)(g), “[t]he court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section.” Based on the record before us, we find no abuse of discretion in the award of $1,000 in attorney fees related to the contempt of court proceeding.
| ^DECREE
For the foregoing reasons, we find no error in the trial court’s denial of the motion to recuse, and affirm the judgment of the trial court granting a protective order on the basis of domestic abuse, suspending the co-parenting guidelines, denying Defendant’s request to sell the family home, awarding attorney fees in the amount of $5,000 to Plaintiff, and assessing court costs against Defendant.
AFFIRMED
*679 hcGRAVOIS, J., CONCURS FOR THE REASONS STATED BY MURPHY, J.
MURPHY, J., CONCURS WITH REASONS

. It is noted that Troy was present at this hearing but was not represented by counsel.

. The judgment also imposed visitation restrictions regarding Troy and his children, which are not at issue in this appeal.

. Troy initially filed a motion for suspensive appeal, which was denied on the basis that La. R.S. 46:2136(F)(1) only provides for a devolutive appeal.

. Of note, under La. C.C.P. art, 3603.1(C)(1), a complainant seeking protection from domestic abuse or stalking "shall not be required to prepay or be cast with court costs or costs of service of subpoena for the issuance. . .of a temporary restraining order.. .or protective order,... and the clerk of court shall immediately file and process the order *673 issued regardless of the ability of the plaintiff to pay court costs.”

. We note that the underlying reason Troy seeks to challenge Mindy’s pauper status seems to be related to his assignment of error pertaining to the reasonableness of the court costs assessed against him, the merits of which we address infra.

. Despite Troy’s argument on appeal that this evidence was unauthenticated, there was no objection to the admissibility of this evidence at the hearing. In fact, at one point the trial court asked Troy’s counsel, "Is there an evidentiary issue why they shouldn’t be admitted?” to which counsel responded, "No.” Additionally, during his testimony, Troy admitted sending the messages.

. It appears the parties have yet to partition their community property. When the community property is partitioned, any interest Troy has in the family home would necessarily be addressed at that time,

. The exact amount of court.costs was not stated in the judgment and is not contained in the appellate record, In his appellate brief, Troy represents that these court costs totaled $4,558.21.

, Troy’s argument that Mindy abused her pauper status by "running up” the court costs by excessive filings is speculative at best. Mindy had no way of knowing whether she would prevail in her request for a protective order. Under La. C.C.P. art. 5188, "if judgment is rendered against a party who has been permitted to litigate without payment of costs, he shall be condemned to pay the costs incurred by him.”

. We note that Mindy did not answer the appeal challenging the amount of the attorney fees award.