S. M.                                              NO. 19-CA-369

VERSUS                                             FIFTH CIRCUIT

T. M.                                              COURT OF APPEAL

                                                   STATE OF LOUISIANA


ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 73,266, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING


December 26, 2019


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Hans J. Liljeberg, and John J. Molaison, Jr.


**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH**
**INSTRUCTIONS**
   **HJL**
   **JGG**
   **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
S. M.
    S. M.

COUNSEL FOR DEFENDANT/APPELLANT,
T. M.
    Mark A. Marino

**LILJEBERG, J.**

Appellant, T.M., appeals the grant of a protective order in favor of his spouse, S.M., and their minor child, M.M., pursuant to La. R.S. 46:2131, *et. seq.*[1] For reasons set forth more fully below, we affirm the trial court's decision to grant the protective order in favor of the minor child, M.M. However, we reverse the protective order granted in favor of S.M. and remand this matter to the trial court to modify the protective order in accordance with this Court's opinion.

## FACTS AND PROCEDURAL BACKGROUND

On January 11, 2019, S.M. filed a verified Petition for Protection from Abuse against T.M., pursuant to La. R.S. 46:2131, *et. seq.*, on behalf of herself and the parties' 16-year-old child, M.M. In the petition, S.M. alleged that on the previous day, January 10, 2019, T.M. verbally assaulted her and harassed her at work. The petition also alleged that T.M. verbally and physically assaulted their minor child, M.M., and that she was brought to the hospital where the alleged abuse was "logged by staff, doctors, and psychiatrists." The petition further alleged that T.M. regularly sends S.M. threatening texts and verbally assaults both M.M. and S.M. on a daily basis. S.M. also claimed the minor child ran away from home due to T.M.'s abuse.

On January 11, 2019, the trial court issued a temporary restraining order, effective through January 25, 2019, prohibiting T.M. from abusing, harassing or contacting the "protected person(s)." The order also granted S.M. exclusive use of the residence shared by the parties and set a January 25, 2019 hearing date for T.M. to show cause why the temporary restraining order and other relief requested should not be made a protective order.

---

[1] The initials of the parties and minor child involved will be used to protect the child's identity.

On January 25, 2019, T.M. and S.M. both appeared in proper person before the trial court for a hearing on the Petition for Protection from Abuse. Following an evidentiary hearing, the trial court entered a protective order in favor of both S.M. and the minor child, M.M., effective for a period of 18 months until July 25, 2020. The protective order also granted S.M. exclusive use of the family residence.

T.M. filed a motion for new trial, which the trial court summarily denied on February 15, 2019. On March 21, 2019, T.M. filed a timely motion and order for appeal, which the trial court granted the same day.

## DISCUSSION

### First Assignment of Error

On appeal, T.M. contends in his first assignment of error that the trial court erred in granting the protective order because S.M. failed to prove the abuse allegations by a preponderance of the evidence.

The Domestic Abuse Assistance Law, La. R.S. 46:2131, *et. seq.*, provides protection in the form of temporary restraining orders and protective orders for persons subject to domestic abuse. *Lepine v. Lepine*, 17-45 (La. App. 5 Cir. 6/15/17), 223 So.3d 666, 674; *Coy v. Coy*, 46,655 (La. App. 2 Cir. 7/13/11), 69 So.3d 1270, 1272. Domestic abuse "includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." La. R.S. 46:2132(3).

Louisiana courts have determined that the definition of domestic abuse does not include nonphysical acts, such as general harassment or family arguments, if those acts do not rise to the level of physical abuse, or otherwise constitute an offense against the person as defined in the Louisiana Criminal Code. *Ariatti v.*

*Plaisance*, 18-84 (La. App. 5 Cir. 9/13/18), 255 So.3d 1239, 1248; *Lee v. Smith*, 08-455 (La. App. 5 Cir. 12/16/08), 4 So.3d 100, 106; *Culp v. Culp*, 42,239 (La. App. 2 Cir. 6/20/07), 960 So.2d 1279, 1282.

To obtain a protective order under the Domestic Abuse Assistance Law, the petitioner must prove the allegations of domestic abuse by a preponderance of the evidence. La. R.S. 46:2135(B); *Ferrand v. Ferrand*, 16-7 (La. App. 5 Cir. 8/31/16), 221 So.3d 909, 943, *writ denied*, 16-1903 (La. 12/16/16), 211 So.3d 1164. A trial court is afforded discretion in the issuance of a protective order and the trial court's order is reversible only upon a showing of an abuse of discretion. *Ruiz v. Ruiz*, 05-175 (La. App. 5 Cir. 7/26/05), 910 So.2d 443, 445.

*Due Process Argument*

Prior to addressing his argument regarding the alleged insufficiency of the evidence, T.M first argues in his appellate brief that a "due process problem" exists with respect to the hearing held by the trial court. T.M. claims the trial court indicated at the outset of the evidentiary hearing that he would like to handle the matter "informally." T.M. argues that because of this statement, it is "uncertain if [he] understood the ramifications of the protective order hearing and what was being conducted by the trial court."

Contrary to T.M.'s characterization of the hearing, the following colloquy between T.M. and the trial court, prior to the start of the evidentiary hearing, indicates that T.M. was fully aware of the purpose of the hearing and the specific relief S.M. was seeking against him:

> COURT: Before we have a seat, because I like to handle this rather informally, I'd like to ask that both of you be sworn in first. (Both parties are sworn in at the same time.) . . . Mr. [T.M.] in a protective order setting usually I ask a few questions of the respondent first. Have you, sir, had an opportunity to read the petition for protection from abuse?
>
> T.M.: Yes, sir, I have.

COURT: Okay. Do you understand what [S.M.] is asking for?

T.M.: Yes, sir.

COURT: Okay. Do you materially oppose what she's asking for, can you live with such an order?

T.M.: No, sir.

COURT: Okay. She's asking you not to contact her in any way. Not to go near an address on Ridgefield or probably a place of employment in Laplace, and for use of the home on Ridgefield. Are all those things something you wish to contest this morning?

T.M.: Yes, sir, all of them.

The hearing then proceeded with sworn testimony from S.M. and M.M., and T.M. was afforded the opportunity to cross-examine both witnesses. T.M. also testified on his own behalf. During that testimony, T.M. indicated that S.M. previously obtained restraining orders against him indicating his familiarity with the process. Based on the foregoing, T.M.'s claim that a "due process problem" existed is without merit.

With respect to the sufficiency of the evidence, T.M. argues that S.M. and M.M. only presented evidence of verbal abuse and arguments which was insufficient to support the granting of the protective order. T.M. contends that with respect to M.M., the basis for filing the protective order was an argument he had with M.M. during which he grabbed the child because she was "acting out" and threatening to run away again. He notes that M.M. testified that T.M. had never previously put his hands on her, except for this one incident. T.M. also argues, without citing to any supporting law, that a pattern of domestic abuse must be established in order to obtain a protective order.

First, we find that neither the definition of "domestic abuse" set forth in La. R.S. 46:2132(3), nor any other provision of the Domestic Abuse Assistance Law requires evidence of a pattern of domestic abuse to obtain a protective order. *See, e.g., McCann v. McCann*, 09-1341 (La. App. 3 Cir. 3/10/10), 33 So.3d 389, 394-95

(rejecting arguments that evidence of a pattern of abuse is required to prove domestic abuse).

*Protective Order Granted to M.M.*

With respect to the protective order granted in favor of M.M., we find the trial court did not abuse its discretion in granting the requested relief. The testimony presented by both M.M. and S.M. indicates a physical altercation occurred between T.M. and M.M. that caused injuries to M.M. M.M. testified that on the day of the incident on January 10, 2019, she was arguing with T.M. and he became agitated and started yelling at her. She explained that they got into the fight because "he's homophobic and he's transphobic and he didn't like the fact that I am the way I am." She testified that T.M. started saying awful things about her gender preferences and she told him that she "felt like he was disregarding" her existence. She explained that T.M. became very mad and started screaming and shouting. She testified that he then leaned over the couch to scream at her and it triggered a panic attack.

M.M. then tried to exit the room, so she could calm down. M.M. testified that T.M. grabbed her and she ended up on the ground. She testified that she kept screaming and shouting for T.M. to let her go, but he would not until her mother intervened. She testified that once she was free, she ran outside and called the police. She explained that the situation terrified her and T.M. made her feel like she was "nothing" and that she "shouldn't have been alive."

M.M. further testified that T.M. had never "put hands on her before," but had previously threatened to hit her. She described an incident in 2015, when they were on vacation. M.M. explained that she was feeling sick and did not want to go into a restaurant. She claimed that T.M "got into my face and told me that if I didn't get up, he was going to punch me." She also testified that she ran away from home in December 2018, after T.M. cornered her upstairs in their home. She

testified that she was dealing with "a lot mentally" at the time and tried to explain that to him. After she left, she went almost two miles from their house and was planning to commit suicide.

On cross-examination, T.M. asked M.M. about his efforts to demonstrate support for her gender preferences. M.M. admitted that T.M. purchased a rainbow flag and other items for her. However, M.M. testified that telling her she was "disgusting and stupid" was not supportive. M.M. also admitted that after S.M. failed to bring M.M. to a therapist, T.M. attempted to obtain a therapist for her.

S.M. also testified regarding the January 10, 2019 incident and explained that on that day, T.M. was verbally abusing M.M., which caused her to become upset. M.M. tried to run past T.M., but he grabbed her, slammed her to the ground and would not let her go. S.M. testified that M.M. was eventually able to get away and went outside to call the police. M.M. was taken to the hospital in an ambulance and sustained scratches and bruising on her neck, back and ribs as a result of the altercation with T.M.

S.M. also testified that T.M.'s verbal abuse of M.M. caused her to run away from home in December 2018. She claimed that he repeatedly told M.M. she was not good enough, was worthless, a piece of trash and that nobody loved her.

In his direct testimony, T.M. accused S.M. of cheating on him and claimed that S.M. previously engaged in a pattern of seeking protective orders when she cheated on him. T.M. admitted to engaging in family arguments with S.M. and M.M., but denied ever abusing his wife or children.

Based on its decision to grant the protective order, it is apparent the trial court chose to believe S.M.'s and M.M's testimony regarding the January 10, 2019 incident. In matters of credibility, an appellate court must give great deference to the findings of the trier-of-fact. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). The trial court is in the best position to view the demeanor and mannerisms of the

witnesses. *Id.* When conflicting testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882-83 (La. 1993).

As explained above, S.M. testified that T.M. grabbed M.M., slammed her to the ground and would not let her go. S.M. testified that M.M. left the scene in an ambulance and sustained scratches and bruising on her neck, back and ribs. Based on the foregoing, we find that the trial court did not abuse its discretion in granting a protective order in favor of M.M.[2]

*Protective Order Granted to S.M.*

T.M. also argues on appeal that the evidence presented regarding the abuse against S.M. was insufficient to grant a protective order because the evidence established that all of the alleged abuse was verbal in nature.

In her petition for protection from abuse, S.M. alleged that T.M. verbally assaulted her and harassed her at work. She further alleged that T.M. sent threatening texts regularly and verbally assaulted her on a daily basis. However, at the evidentiary hearing, S.M. did not mention nor provide any testimony or other evidence regarding the alleged threatening texts. She only testified that T.M. generally engaged in a pattern of abusive behavior against her and told the children she was a "bad person." She further claimed that several months prior to the hearing, T.M. sent her multiple messages stating that he would no longer give her and M.M. money and she would need to get a job. She testified that she obtained a

---

[2] In *S.L.B. v. C.E.B.*, 17-978, 17-979, 17-980 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 957-60, the appellate court determined the trial court did not abuse its discretion by finding physical domestic abuse occurred and issuing a protective order based on a mother's actions of striking a child in the face causing a nosebleed, knocking the child to the floor and climbing on top of him during an argument about washing dishes. Furthermore, in *Vital v. Francois*, 12-1279 (La. App. 3 Cir. 5/1/13), 2013 WL 1846626, the court found the trial court did not abuse its discretion in issuing a protective order where the father whipped the child several times with a belt causing her to fall to the floor and sustain bruises on her leg. The father also grabbed the child by the neck, threw her to the ground and continued to whip her.

job and that because she was no longer at home regularly, T.M. began verbally abusing M.M.

In response to the trial court's question as to whether T.M. physically abused her, S.M. responded affirmatively and stated only that she had been to court before in 2014. S.M. did not provide a case number for the prior proceedings, did not provide an explanation or details about the prior physical abuse and did not seek to introduce records from the prior court proceeding or even ask the trial court to take judicial notice of the prior court proceeding.[3] The trial court then inquired about other instances of physical abuse and S.M. responded that "it's more verbal now then (sic) physical," but did not provide any further details about the alleged abuse against her other than "approaching me, getting in my face because he wants me to fight back." After S.M. provided this response, the trial court again asked if she could provide information regarding any other instances of abuse and S.M. responded, "No."

As explained above, Louisiana courts have held that the definition of domestic abuse in La. R.S. 46:2132(3) does not include nonphysical acts, such as general harassment and family arguments, unless the non-physical acts constitute an offense against the person as defined in the Louisiana Criminal code. *See Lee v. Smith*, *supra*. Louisiana court have recognized that stalking (La. R.S. 14:40.2)[4]

---

[3] In her appellate brief, S.M. provides additional details regarding alleged threats T.M. made at her place of employment on the day of the January 10, 2019 incident and claimed that he tampered with her vehicle and caused it to become inoperable. However, this Court cannot consider testimony or evidence from a prior domestic abuse proceeding unless it included in the record on appeal. *See Shaw v. Young*, 15-974 (La. App. 4 Cir. 8/17/16), 199 So.3d 1180, 1184.

[4] La. R.S. 14:40.2 defines stalking as follows:

A. Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

* * *

C. For the purposes of this Section, the following words shall have the following meanings:

(1) "Harassing" means the repeated pattern of verbal communications or nonverbal behavior

and cyberstalking (La. R.S. 14:40.3)[5] fall under the category of nonphysical

offenses against the person included in the definition of physical abuse. *See*

*Lepine*, *supra; Shaw v. Young*, 15-974 (La. App. 4 Cir. 8/17/16), 199 So.3d 1180.

S.M. alleged in her Petition for Protection from Abuse that T.M. regularly

sent her threatening texts and harassed her on a daily basis. In order to obtain a

protective order on these grounds, however, S.M. was required to prove these

allegations by a preponderance of the evidence. Considering the lack of evidence

of physical abuse against S.M., or evidence of conduct that would constitute an

offense against the person committed by T.M. against S.M. as defined above under

the Louisiana Criminal Code, we must find that the trial court abused its discretion

by granting a protective order in favor S.M. against T.M. However, because we

determined that the trial court appropriately granted a protective order in favor of

the minor child, M.M., we maintain the trial court's order granting exclusive use of

the family domicile to S.M. Accordingly, we remand the matter to the trial court

to modify the protective order to remove S.M. as a "protected person."

**Second Assignment of Error**

In his second assignment of error, T.M. argues that the trial court abused its

discretion by denying his motion for new trial. He notes that in addition to raising

issues regarding the insufficiency of the evidence, he also argued in the motion for

new trial that "he was not advised of his right to counsel" and that the protective

order issued by the trial court is confusing because it is not clear whether it is a

"temporary restraining order and/or order of protection."

---

without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.

 (2) "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct.

[5] La. R.S. 14:40.3(B) defines cyberstalking, *inter alia*, as electronically mailing or communicating "to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person."

The motion for new trial was only one paragraph and contrary to T.M.'s representation in his appellate brief, the motion did not state that T.M. was not advised of the right to counsel, but rather that he did not have the "opportunity to hire counsel for the hearing." Even if T.M. raised the argument as alleged, he does not cite to any authority that required the trial court to advise him of his right to counsel during the protective order proceedings.

T.M. also raises the issue of the alleged due process problems addressed above and argues that because he was not represented during the hearing, the trial court "should have granted the new trial on the basis of due process and good grounds thereof." As discussed above, the colloquy between T.M. and the trial court establishes that T.M. was fully aware of the allegations set forth in the Petition for Protection from Abuse and the relief requested against him during the proceedings. Furthermore, T.M. did not request a continuance to obtain counsel.

T.M. finally argues that the trial court should have granted the motion for new trial because the language in the order issued by the trial court creates a "great deal of confusion and uncertainty as to whether a protective order and/or restraining order was intended to be issued by the trial court." On the first page of the protective order form, the trial court had a choice to check a box indicating whether the order was either a temporary restraining order, protective order or modified protective order. T.M. does not dispute that the trial court checked the box indicating the order was a protective order on the first page. Rather, T.M. contends the nature of the order is confusing because the heading on the second page, "Temporary Restraining Order," indicates the trial court issued a temporary restraining order. Finally, T.M. notes that the box checked under the trial court's signature indicates that the order was issued "ex parte" rather than "after notice and opportunity for a hearing given to defendant." T.M. argues that these additional issues create additional uncertainty with respect to his "due process rights."

When issuing protective orders under the Domestic Abuse Assistance Law, courts are required to use a uniform form developed, approved and distributed by the judicial administrator's office for the Louisiana Supreme Court. La. R.S. 46:2136.2(C).[6] It appears from the notation at the bottom of the January 25, 2019 protective order, that the trial court used form "LPOR 1." According to the information and forms available regarding the Louisiana Protective Order Registry ("LPOR") on the Louisiana Supreme Court's website, LPOR 1 is a form to be used when issuing a temporary restraining order. LPOR 3 appears to be the proper form to use when a trial court issues a protective order.

Regardless, we do not find that the use of an incorrect form creates a "due process problem" that required the trial court to grant T.M. a new trial on the Petition for Protection from Abuse. The first page of the order clearly indicated the trial court issued a protective order, as opposed to a temporary restraining order, and defined the protected persons as S.M. and M.M. The protective order further indicated in two different places that it was effective for 18 months until July 25, 2020, and therefore, was not temporary. Finally, as discussed more fully above, the trial court explained to T.M. at the beginning of the hearing that the matter involved a request for a protective order. The parties participated in an evidentiary hearing and at the end of the hearing, the trial court granted a protective order for 18 months. Accordingly, we do not find that the trial court abused its discretion by denying T.M.'s motion for a new trial. However, because we are remanding the matter for the trial court to remove S.M. as a protected person, we also instruct the trial court to use form LPOR 3 to prepare the modified protective order.

---

[6] La. R.S. 46:2136.2(C) provides:

> The courts of this state shall use a uniform form for the issuance of any protective or restraining order, which form shall be developed, approved, and distributed by the Judicial Administrator's Office, shall be titled the "Uniform Abuse Prevention Order".

**DECREE**

Based on the foregoing, we affirm the trial court's decision to grant the protective order in favor of the minor child, M.M., but reverse the protective order granted in favor of S.M. We further remand the matter to the trial court to modify the protective order to remove S.M. as a protected person and instruct the trial court to use form LPOR 3 to prepare the modified protective order.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 26, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-CA-369**

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
MARK A. MARINO (APPELLANT)

**MAILED**
S. M.  (APPELLEE)
IN PROPER PERSON
1409 RIDGEFIELD DRIVE
LAPLACE, LA 70068