NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0240

AMY CANCIENNE CAVE

VERSUS

MICHAEL LANGDON CAVE

*CONSOLIDATED WITH*

NO. 2020 CU 0550

AMY CANCIENNE CAVE

VERSUS

MICHAEL LANGDON CAVE

*Judgment Rendered:* MAR 2 5 2021

* * * * * * * *

Appealed from the Family Court
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F198249

The Honorable Pamela J. Baker, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Michael L. Cave<br>Baton Rouge, Louisiana | Appellant<br>In Proper Person |
| Stephanie F. Cave<br>Baton Rouge, Louisiana | Co-Appellant<br>In Proper Person |
| Wendy L. Edwards<br>Jack M. Dampf<br>Baton Rouge, Louisiana | Counsel for Appellee<br>Amy Cancienne Cave |

McClendon, J. concurs

Welch, J. dissents without reasons

Nicole Tusa Templet
Baton Rouge, Louisiana

Counsel for Appellees
A.C. and E.C.

Mary E. Heck Barrios
Denham Springs, Louisiana

Counsel for Appellee
L.C.

\* \* \* \* \* \* \* \*

BEFORE: McCLENDON, THERIOT, AND WOLFE, JJ.

\* \* \* \* \* \* \* \*

**THERIOT, J.**

In this consolidated appeal, Michael Langdon Cave appeals several rulings of the Nineteenth Judicial District Court, including the Nineteenth Judicial District Court's grant of a protective order against him and subsequent modification of joint custody to sole custody and denial of visitation rights. Dr. Stephanie Cave, Michael Langdon Cave's mother, appeals the Nineteenth Judicial District Court's denial of grandparent visitation rights. For the following reasons, we affirm the trial court's judgments. We also deny the Appellees' answers to both appeals.

## FACTS AND PROCEDURAL HISTORY

This matter has a lengthy procedural history. Michael Langdon Cave and Amy Cancienne Cave were married on May 25, 1996, in Terrebonne Parish. Thereafter, they established their matrimonial domicile in East Baton Rouge Parish. Three children were born of the marriage: L.C., born October 18, 1999, A.C., born August 2, 2002, and E.C., born May 15, 2004. Both L.C. and A.C. have reached the age of majority during this litigation; E.C. is still a minor.[1]

Mr. Cave and Mrs. Cave physically separated on February 9, 2015. On February 18, 2015, Mrs. Cave filed a petition for divorce pursuant to La. Civ. Code art. 102. Mrs. Cave sought joint custody of the children, requesting that she be given primary custody and designation as domiciliary parent, and Mr. Cave given visitation rights subject to Mrs. Cave's approval and terms. In the alternative, Mrs. Cave sought sole custody of the minor children, with Mr. Cave having limited supervised visitation. Mrs. Cave further requested child support in an amount to be set by the trial court. Additionally, Mrs. Cave declared her fear that Mr. Cave may harass her, and thus sought a temporary restraining order to be issued immediately, pursuant to La. R.S. 9:372.1, enjoining Mr. Cave from harassing Mrs. Cave at her

---

[1] In this opinion, we use the parties' children's initials, rather than their full names, to protect their privacy. See Uniform Rules, Courts of Appeal, Rules 5-1 and 5-2.

3

residence, place of employment, or anywhere she may be located.[2] Mrs. Cave further requested, in due course, a permanent injunction issued to the same effect.

On April 24, 2015, pursuant to an agreement of the parties, the trial court rendered a stipulated judgment which ordered, in pertinent part, that (1) Mr. Cave and Mrs. Cave be awarded joint care, custody, and control of the children; (2) Mrs. Cave be designated as domiciliary parent; and (3) any visitation afforded to Mr. Cave be subject to Mrs. Cave's terms, conditions, and sole discretion. The trial court also ordered that mutual and reciprocal permanent injunctions be issued pursuant to La. R.S. 9:372.1 enjoining both parties from harassing the other party in any manner. The trial court signed a judgment of divorce on March 16, 2016.

On September 28, 2016, Mrs. Cave filed a rule to set child support, for contempt, and motion to compel. She asserted that Mr. Cave had violated the permanent injunctions contained within the April 24, 2015 stipulated judgment. Namely, she alleged that Mr. Cave had come to her home uninvited on several occasions, sent her a text message asking her to withdraw her discovery requests, confronted her while she was leaving a restaurant, and showed up at her place of employment. Accordingly, Mrs. Cave sought to have Mr. Cave held in contempt of court for his repeated violations.

On October 31, 2016, Mr. Cave's attorney filed an ex parte motion to withdraw as counsel of record. Subsequently, on November 2, 2016, the trial court signed an order allowing the attorney to withdraw. From this point onwards, Mr. Cave represented himself in these proceedings.[3]

On November 29, 2016, in an interim judgment rendered in open court, the trial court granted Mr. Cave temporary supervised physical custody of the minor children every other weekend, as well as supervised physical custody every

---

[2] Louisiana Revised Statutes 9:372.1 states, "In a proceeding for divorce, a court may grant an injunction prohibiting a spouse from harassing the other spouse."

[3] Mr. Cave was suspended from practicing law on July 27, 2017.

4

Thursday from 5:00 p.m. until 6:30 p.m.[4] The interim judgment also ordered Mr. Cave, as well as Mrs. Cave's counsel, to contact Dr. Brandon Romano and inquire about an ongoing mental health evaluation. Further, the interim judgment ordered Mr. Cave to submit to an evaluation by Dr. Steven Zuckermann to determine whether Mr. Cave was physically capable of exercising physical custody of the minor children without supervision and/or restrictions.

On December 27, 2016, Mrs. Cave filed a supplemental and amended motion for contempt. Mrs. Cave claimed that Mr. Cave had committed further acts of contempt, including engaging in a hostile and harassing pattern of texting Mrs. Cave, her brother, her father, and the parties' children. According to Mrs. Cave, these text messages often included "implied or express threats of litigation, artful manipulation, and blatant parental alienation." Mrs. Cave further suggested that limitations and restrictions be ordered regarding the child custody and co-parenting application Our Family Wizard ("OFW"), which is used to facilitate communication between co-parents and children. Mrs. Cave also alleged that Mr. Cave had continued to show up to Mrs. Cave's home and workplace unannounced on several occasions.

Trial on both the September 28, 2016 rule to set child support, for contempt, and motion to compel, and the December 27, 2016 supplemental and amended motion for contempt was set for February 23, 2017.[5] On that date, Mr. Cave was adjudged guilty of direct contempt of court and remanded to jail for thirty days. The trial court commitment order did not provide a fine amount, and the trial court stated at the February 23, 2017 hearing that it would not be fining Mr. Cave.

On April 3, 2017, Mr. Cave filed a motion for stay order, seeking to stay the pending proceedings due to his intent to seek supervisory writs of review of several

---

[4] A judgment to this effect was signed on January 3, 2017.

[5] The trial was on February 23, 2017; March 16, 2017; March 17, 2017; April 3, 2017; August 14, 2017; August 28, 2017; and August 31, 2017.

of the trial court's orders, including the trial court's finding him in contempt, ordering him to publicly apologize in the courtroom, and having him arrested.[6] On the same date, Mr. Cave filed a motion to have the trial court judge, Judge Day, recused from the matter. Mr. Cave alleged that Judge Day had demonstrated an inability to be fair, unbiased, and impartial. Mr. Cave's primary grievance towards Judge Day related to her finding him in contempt. A hearing on the motion for recusal was held on April 7, 2017, and presided over by Judge Baker. In open court on that date, Judge Baker denied Mr. Cave's motion for recusal. A judgment to that effect was signed by Judge Baker on May 9, 2017.

On April 12, 2017, Mrs. Cave filed a petition for protection from abuse, alleging that Mr. Cave had committed acts that constitute the crimes of stalking and cyberstalking. She further alleged that his actions would cause immediate and irreparable injury to the minor children if they were forced to return to his care.

Upon the filing of the petition for protection from abuse, the trial court issued a temporary restraining order ("TRO") pursuant to La. R.S. 46:2131, *et seq.*, effective through April 26, 2017, finding that the allegations presented constituted an immediate and present danger to the physical safety of Mrs. Cave and the minor children.[7]

On May 15, 2017, Mrs. Cave filed a motion for court-ordered hair and urine drug-screen analysis pursuant to La. R.S. 9:331.1. In this motion, Mrs. Cave asserted that she had reason to believe Mr. Cave was consuming alcohol and abusing prescription medication. Mrs. Cave further alleged that Mr. Cave had previously abused cocaine.

---

[6] It appears from the record that Mr. Cave ultimately did not seek supervisory writs of review. His motion for stay order was denied by the trial court as untimely on April 10, 2017. He subsequently filed a motion and order of appeal of the contempt ruling. An amended notice of appeal was filed on May 9, 2017.

[7] Several subsequent TROs were issued. The TROs were ultimately replaced by the July 21, 2017 protective order.

On May 24, 2017, the trial court ordered both parties to submit to urine and hair drug analysis, as well as an alcohol breath test. Mr. Cave refused to comply and was again found in contempt.[8] He was sentenced to serve time in parish prison until he complied with the court-ordered drug and alcohol analysis.

On July 21, 2017, the trial court issued a protective order pursuant to La. R.S. 46:2131, *et seq.*, in favor of Mrs. Cave, L.C., A.C., and E.C. In the protective order, the trial court found that Mr. Cave represented a credible threat to the physical safety of Mrs. Cave and the children, and, pursuant to La. R.S. 46:2136.3, prohibited him from possessing a firearm for the duration of the order. Although set to be effective through January 21, 2019, parts of the protective order were made permanent and set not to expire. Specifically, Mr. Cave was (1) ordered not to abuse, harass, assault, stalk, follow, track, monitor, or threaten Mrs. Cave or the children in any manner; (2) ordered not to contact Mrs. Cave or the children personally, through a third party, via public posting, or any other means of communication without the express written permission of the court; (3) ordered not to go within 100 yards of Mrs. Cave or the children without the express written permission of the court; (4) ordered not to go within 100 yards of Mrs. Cave and the children's residence; (5) ordered to stay away from Mrs. Cave's and the children's place of employment or school, and ordered not to interfere in any manner with such employment or school; and (6) ordered not to damage any of Mrs. Cave or the children's belongings or property and ordered not to interfere in any way with their living conditions. The protective order granted temporary custody of the children to Mrs. Cave, and allowed Mr. Cave supervised visitation with the minor children every other Saturday from 9 a.m. to 11 a.m. at Family

---

[8] Mr. Cave was subsequently found to be in contempt on several occasions, including at an August 31, 2017 hearing in which he "continuously interrupted and talked over the Court and opposing counsel" and "acted discourteously, contumaciously, and insolently" toward the trial court. On October 17, 2017, Mr. Cave was again found in direct contempt of court, this time for his refusal to comply with the previously ordered twenty-four hours of community service. Mr. Cave was ordered to serve six days in parish prison for his refusal to comply.

Services of Greater Baton Rouge. The protective order also ordered Mr. Cave to undergo a mental health evaluation by Dr. Alan Taylor, and stated that, upon completion of the evaluation, the trial court would reconsider the requirement that visitation be supervised. Mr. Cave was further ordered to sign up for random drug screening until he was drug free for six months.

On August 7, 2017, Mr. Cave filed a motion and order for new trial regarding the July 21, 2017 protective order, or alternatively, a motion for appeal.[9]

Subsequently, in an order signed August 24, 2017, the trial court ordered Mr. Cave to contact Dr. Alan Taylor within fourteen days to schedule an appointment and submit to a mental health evaluation.

On November 16, 2017, Mrs. Cave filed, among other motions, a rule for contempt of court. Mrs. Cave alleged that Mr. Cave had continued to engage in a hostile and harassing pattern of contact, sending text messages and emails to her and the children in violation of the April 24, 2015 stipulated judgment and the July 21, 2017 protective order. Mrs. Cave filed a supplemental and amended rule for contempt, among other motions, on January 9, 2018.

In a judgment signed on January 23, 2018, the trial court ruled on Mrs. Cave's September 28, 2016 rule to set child support, for contempt, and motion to compel and December 27, 2016 supplemental and amended motion for contempt.[10] The trial court, in pertinent part, found Mr. Cave guilty of contempt for his failure to follow a court order and for continuing to violate the April 24, 2015 stipulated judgment's permanent injunction against harassment.

On January 25, 2018, Judge Day recused herself from this matter. In her recusal, she stated:

---

[9] On November 6, 2017, the trial court denied Mr. Cave's August 7, 2017 motion for new trial. The trial court further denied an oral motion made by Mr. Cave to stay the July 21, 2017 protective order.

[10] On January 31, 2018, Mr. Cave filed a motion for new trial or, alternatively, motion for appeal of the January 23, 2018 judgment. The trial court denied this motion on July 11, 2018.

> [Mr. Cave] has repeatedly attempted to engage in *ex parte* communication with the Court via e-mails of a harassing and threatening nature toward the Court and Court staff. Although I remain unbiased in this matter, Mr. Cave's behavior toward the Court and Court staff has become egregious, excessive, and of such a personal nature that a reasonable person might begin to harbor doubts as to the Court's impartiality.

The matter was re-allotted to Judge Greene, who also recused, stating that Mr. Cave and someone on his behalf had contacted him on several occasions regarding this case. The case was then re-allotted to Judge Baker.

On April 17, 2018, Mary Barrios enrolled as counsel on behalf of L.C., who reached the age of majority on October 18, 2017.

On July 12, 2018, Mr. Cave filed several motions, including a petition to modify custody and a "motion to terminate and/or dissolve and/or modify 'protective order' award and set paternal gran[d]parent visitation rights, and award permanent spousal support; petition to annul marital contract and for contempt of court."[11]

In response to Mr. Cave's July 12, 2018 petition to modify custody, Mrs. Cave filed exceptions of no cause of action and res judicata. Further, in response to Mr. Cave's "motion to terminate and/or dissolve and/or modify 'protective order' award and set paternal gran[d]parent visitation rights, and award permanent spousal support; petition to annul marital contract and for contempt of court," Mrs. Cave filed exceptions of no cause of action, no right of action, and res judicata.

On August 10, 2018, Mrs. Cave, individually and on behalf of the two remaining minor children, and L.C. filed a joint motion to modify the July 21, 2017 protective order. This motion sought to update the addresses Mr. Cave was ordered not to go within 100 yards of, and the schools attended by the children, which Mr. Cave was ordered to stay away from. On November 5, 2018, the same

---

[11] On January 22, 2019, the trial court signed a judgment which dismissed Mr. Cave's July 12, 2018 motion to award permanent spousal support and July 12, 2018 petition for contempt of court by mutual agreement stipulated to by the parties.

parties filed a joint supplemental and amended motion to modify the July 21, 2017 order, this time including Mrs. Cave's place of employment as a place for Mr. Cave to stay away from.

In open court on December 18, 2018, the trial court, in pertinent part, (1) dismissed Mr. Cave's July 12, 2018 motion to set paternal grandparent visitation rights; (2) dismissed Mr. Cave's July 12, 2018 motion to terminate and/or dissolve and/or modify the protective order; (3) gave Mr. Cave thirty days to amend his petition to modify custody to adequately allege a material change of circumstances; (4) dismissed Mr. Cave's requests to annul the parties' marriage; (5) ordered that all remaining issues contained in Mrs. Cave's November 15, 2017 rule for contempt of court, attorney's fees, and court costs, and Mrs. Cave's January 9, 2018 supplemental and amending rule for contempt of court, attorney's fees, and court costs and rule to establish child support arrearage be determined at trial; and (6) ordered that Mrs. Cave and L.C.'s joint motion to modify the protective order and joint motion to supplement and amend the joint motion to modify the protective order be reset for hearing on January 3, 2019.[12]

In open court on January 3, 2019, the trial court, in pertinent part, granted the joint motion and joint supplemental and amended motion to modify the protective order, filed by L.C. and Mrs. Cave, individually and on behalf of A.C. and E.C.[13] The modified protective order was issued on January 3, 2019. The modified protective order also stated that Mr. Cave could go to certain events and locations on LSU's campus as long as he stayed 100 yards away from any protected person. The custody issues were set for trial.

On January 8, 2019, Mrs. Cave filed a rule to extend the provisions of the July 21, 2017 protective order. Mrs. Cave noted that the July 21, 2017 protective

---

[12] The trial court signed a judgment to this effect on February 26, 2019.

[13] The trial court signed a judgment to this effect on January 22, 2019.

order was set to expire on January 21, 2019, and requested that the provisions of the protective order be extended due to Mr. Cave's efforts to obtain joint custody, his repeated and knowing violations of the permanent injunctions contained within the protective order, and him being arrested on several occasions. Mrs. Cave further averred that Mr. Cave had failed to fulfill the trial court's requirements of counseling and drug testing. Her request to extend the provisions of the protective order included extension of the protective order's provision which granted her sole custody of the minor children.

On January 18, 2019, Mr. Cave and his mother, Dr. Stephanie Cave, filed an "amended rule to set/modify custody and visitation, and set paternal grandparent visitation rights, to determine other ancillary issues, and a petition for partition of community property."

On January 22, 2019, in open court, the trial court, in pertinent part, (1) denied Mrs. Cave's January 8, 2019 rule to extend provisions of the July 21, 2017 protective order and her request to maintain the award of sole custody and order other conditions imposed on Mr. Cave in the protective order until trial on this subject matter; (2) set Mrs. Cave's request to be awarded sole custody of A.C. and E.C. for hearing; (3) ordered Mr. Cave to continue to be enrolled in and submit to random urinalysis screenings two times per month; and (4) set the matter of determination of the parties' minor children's testimony at trial, including the procedure to be utilized during this testimony, for hearing.[14]

On February 12, 2019, the trial court issued written reasons which, in relevant part, established what procedural safeguards the trial court would implement to ensure the best interests of the minor children when giving testimony at the upcoming child custody trial. The trial court noted that Mr. Cave had subpoenaed the parties' children to testify and that the minor children (at that time,

---

[14] The trial court signed a judgment to this effect on February 7, 2019.

A.C. and E.C.) had not seen Mr. Cave in eighteen months. To protect the minor children, the trial court ordered the parties to submit a reasonable amount of relevant suggested questions for the trial court to ask the children. The trial court further accommodated the parties and attorneys by allowing them to listen to the minor children's live testimony. Additionally, the trial court appointed an attorney to represent the minor children pursuant to La. R.S. 9:345(B) and stated that the minor children's attorney would be allowed to be present during the testimony of the minor children, ask questions, and make objections.

On August 28, 2019, the trial court issued a modified protective order, effective through February 28, 2021. Also on August 28, 2019, the trial court issued written reasons relating to a judgment later signed on October 15, 2019. The October 15, 2019 judgment in relevant part (1) granted sole custody of A.C. and E.C. to Mrs. Cave; (2) denied Mr. Cave's July 12, 2018 requests to set and/or modify custody and/or visitation; and (3) denied Dr. Cave's January 18, 2019 rule for grandparent visitation.

On November 5, 2019, Mr. Cave and Dr. Cave appealed the trial court's October 15, 2019 judgment. Mrs. Cave, L.C., and A.C. and E.C. (through their appointed attorney) filed answers to both appeals, averring that these appeals are frivolous and requesting the appeals be dismissed in accordance with Uniform Rules of Courts of Appeal Rule 2-19. Their answers also seek reasonable court costs and attorneys' fees incurred for the defense of same.

## ASSIGNMENTS OF ERROR

This matter consists of one appeal by Mr. Cave (2020 CA 0240), and another joint appeal by Mr. Cave and Dr. Cave (2020 CU 0550). In 2020 CA 0240, Mr. Cave asserts the following assignments of error:

(1) The trial court abused its discretion in issuing a permanent protective order for Mrs. Cave and the parties' children against Mr. Cave because the acts Mr. Cave is alleged to have committed are not

within the scope of the Domestic Abuse Assistance Laws (La. R.S. 46:2131, *et seq.*) and posed no real or immediate threat of harm, where there was no showing made of violence or physical abuse, or threats of violence or physical abuse.

(2) The trial court committed manifest procedural error in its issuance of a permanent protective order by failing to adhere to procedural time limits in the conversion of an ex parte, "no notice" temporary restraining order.

(3) The trial court committed manifest procedural error in its issuance of a permanent protective order when it failed to order independent counsel on behalf of the minor children, in violation of La. R.S. 9:345(B).

(4) The trial court committed manifest procedural error in its finding Mr. Cave in contempt of court without a hearing, and this constitutes a denial of procedural due process.

(5) The trial court committed manifest error in holding Mr. Cave in contempt of court for proffering a treating physician's report.

(6) The trial court committed manifest error in sentencing Mr. Cave, a lawyer, to thirty days in jail for first direct contempt of court, in violation of La. R.S. 13:4611, where the maximum allowable punishment is up to twenty-four hours incarceration.

(7) The trial court judge committed manifest error in not timely self-recusing following her unlawful ruling holding Mr. Cave in contempt of court on February 23, 2017, her illegal sentence of Mr. Cave to thirty days incarceration for a first direct contempt of court, and Mr. Cave's filing of a motion for recusation on April 3, 2017.

In the accompanying appeal, 2020 CU 0550, Mr. Cave assigns the following as error:

(1) The trial court abused its discretion in issuing a permanent protective order for Mr. Cave and the parties' children against Mr. Cave because the acts Mr. Cave is alleged to have committed are not within the scope of the Domestic Abuse Assistance Laws (La. R.S. 46:2131, *et seq.*) and posed no real or immediate threat of harm, where there was no showing made of violence or physical abuse, or threats of violence or physical abuse.

(2) The trial court committed manifest legal error in renewing the expired protective order on August 28, 2019, after previously denying Mrs. Cave's rule to extend the provisions of the July 21, 2017 protective order.

(3) The trial court committed manifest legal error, procedural and substantive, in its sequestration of the parties and in denying Mr.

Cave's 5th and 14th Amendment due process rights, including the right to cross-examine witnesses at trial.

(4) The trial court committed manifest error, procedurally, under La. R.S. 9:345, in its sequestration of the parties and in denying the Appellant his right to participate and be present in the same manner as court appointed independent counsel in the closed door hearing of the witnesses.

(5) The trial court committed manifest error in modifying Mr. Cave's joint custody to sole custody in favor of Mrs. Cave, and in awarding no visitation to Mr. Cave, particularly where the factors of the best interests of the children weigh heavily in favor of joint custody, increased visitation, and a set visitation schedule.

Further, in appeal 2020 CU 0550, Dr. Cave sets forth the following assignment of error:

(1) The trial court abused its discretion in denying Dr. Cave paternal grandparent visitation rights to see her grandchildren where the factual record shows it is in the best interest of the minor children to encourage, support, and maintain the relationships between Dr. Cave and the grandchildren, particularly where there may exist extraordinary circumstances under La. R.S. 9:344.

## DISCUSSION

### 2020 CA 0240

Assignment of Error #1

Mr. Cave asserts that the trial court abused its discretion in issuing the July 21, 2017 protective order. He argues that the acts he is alleged to have committed are not within the scope of the Domestic Abuse Assistance Laws and posed no real or immediate threat of harm when there was no showing made of violence or physical abuse, or threats of violence or physical abuse.

The July 21, 2017 protective order was issued pursuant to La. R.S. 46:2131, *et seq.*, which provides protection in the form of TROs and protective orders for persons subject to domestic abuse. See *Pellerano v. Pellerano*, 2017-0302 (La. App. 1 Cir. 4/12/19); 275 So.3d 947, 950, *writ denied sub. nom.*, 2019-00756 (La. 9/17/19); 279 So.3d 379. Upon good cause shown in an ex parte proceeding, the court may enter a temporary restraining order, without bond, as it deems necessary

14

to protect from abuse the petitioner or any minor children. La. R.S. 46:2135(A). If a temporary restraining order is granted without notice, the matter shall be set for a hearing within twenty-one days, at which time, cause must be shown why a protective order should not be issued. At the hearing on the rule for the protective order, the petitioner must prove the allegations of abuse by a preponderance of the evidence. See La. R.S. 46:2135(B); *Thomas v. Hyatt*, 2012-1891 (La. App. 1 Cir. 8/6/13); 2013 WL 4007777 (unpublished), at *2. A trial court's decision to issue or deny a protective order is reversible only upon a showing of an abuse of discretion. Additionally, the trial court sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. *Pellerano, 275 So.3d at 950.*

Domestic abuse "includes but is not limited to physical or sexual abuse and <u>any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana</u>, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." La. R.S. 46:2132(3). (Emphasis added.) Family arguments that do not rise to the threshold of physical or sexual abuse or violations of the criminal code are not within the ambit of the Domestic Abuse Assistance Statutes. *Thomas*, 2013 WL 4007777 (unpublished), at *3.

The acts which Mr. Cave is alleged to have committed fall under La. R.S. 14:40.2(A), which is contained within the Criminal Code of Louisiana. La. R.S. 14:40.2(A) states:

> A. Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally

implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

"Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures. La. R.S. 14:40.2(C)(1). "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct. La. R.S. 14:40.2(C)(2).

Further, La. R.S. 14:40.3(B) provides in pertinent part:

B. Cyberstalking is action of any person to accomplish any of the following:

. . .

(2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person.

The pertinent question is whether Mr. Cave's actions were offenses against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, committed by one family member against another, and therefore constitute domestic abuse so as to warrant the July 21, 2017 protective order. See La. R.S. 46:2132(3).

Mrs. Cave filed a petition for protection from abuse on April 12, 2017, seeking protection for herself and her minor children, L.C., A.C., and E.C. In her allegations of fact, Mrs. Cave alleged that Mr. Cave would drive past her home and come to her home and workplace uninvited. Mrs. Cave further asserted that Mr. Cave harassed and stalked her via pages of text messages and messages on OFW, and by continuously being at or near her home or attempting to utilize the children to find out her whereabouts. Mrs. Cave alleged that, since March 17, 2017, Mr.

Cave had sent Mrs. Cave messages in which he asked her on dates, discussed his mental health issues and blamed her for his problems, commented on her appearance, and threatened legal action. Mrs. Cave further alleged that Mr. Cave informed her via text that a friend of his, who lived nearby, had been tasked with "looking after" Mrs. Cave and the children. Mrs. Cave asserted that Mr. Cave's actions constituted intentional and repeated harassment of herself and her children and that she suffered emotional distress and worried for the safety of the children. She further stated that she was concerned about Mr. Cave's intentional and repeated uninvited presence at or near her home, and his verbal, written, or behaviorally implied threats of bodily injury, assault, stalking, and cyberstalking to herself, her family, and her friends.

Further regarding the children, Mrs. Cave alleged that Mr. Cave went on a date instead of exercising his physical custody; gave L.C. a key to his apartment, told him he would not be back until the next morning, and left the children with no money for food; on a trip to New Orleans, locked the children out of his hotel room and told them something to the effect of "I want you to know what [it] feels like to be separated from your family"; texted E.C. and told him to research Stockholm Syndrome; and texted A.C. telling her what her mother could or should do at court. Mrs. Cave further alleged that, despite Mr. Cave only being allowed supervised visitation as of November 29, 2016, when the interim judgment was rendered in open court, Mr. Cave's parents had failed to act properly as supervisors and had left the children alone in Mr. Cave's presence on numerous occasions. She also alleged that Mr. Cave had refused to undergo a mental health evaluation by a court-appointed expert, despite being ordered to do so in the interim judgment. Mrs. Cave stated her fear that Mr. Cave's actions were becoming more egregious and dangerous, and asserted that Mr. Cave had continued to stalk and cyberstalk her.

From the date of the filing of the petition for protection from abuse until July 21, 2017, the trial court issued TROs against Mr. Cave. Trial on the petition for protection from abuse was held on April 26, 2017; May 24, 2017; May 25, 2017; July 5, 2017; July 6, 2017; and July 21, 2017. During the trial, Mrs. Cave testified and/or presented evidence of Mr. Cave's actions and the messages he sent, including the following, which occurred prior to the filing of the petition for protection from abuse, but after the April 25, 2015 stipulated judgment that enjoined the parties harassing one another:

(1) On March 27, 2017, Mr. Cave drove into an alley near Mrs. Cave's home and approached Mrs. Cave and E.C., who were on a walk. On the same date, Mr. Cave sent an email to one of Mrs. Cave's attorneys, copying Mrs. Cave, her other attorney, her father, and her brother. In the email, Mr. Cave stated the following in reference to the ongoing proceedings: "I'm not the judge, nor am I the Judge of all Judges. It does bring to mind, though, my History education of the Holocaust when Hitler was exterminating the Jews, while the German people said nothing to stop the abuse, torture, and killing. They sat idly by, watching the smokestack's chambers spew ash and smoke, while the Nazis stole heirlooms from Jewish families."

(2) On March 28, 2017, Mr. Cave sent a message to Mrs. Cave on OFW in which he asked Mrs. Cave knew "of any potential applicants" for the "position of Queen," which he was interviewing for.

(3) On March 30, 2017, Mr. Cave sent a message to Mrs. Cave on OFW in which he stated that he was considering filing a "Writ of Habeas Corpus and a federal complaint." He asked Mrs. Cave to "[j]ust relax" and stated that "[e]verything will be done for your benefit, I promise. And, it will be done for my children's too."

(4) On April 1, 2017 and April 2, 2017, Mr. Cave sent lengthy messages to Mrs. Cave in which they attempted to organize what appetizers to bring to an event L.C. was attending, and wherein Mr. Cave stated, "You are frustrating me, Amy. Be mature, and come to my car at the street, and say thank you." Mr. Cave further stated, "I seek only to show you love and peace. Hell, I'd hug you every day, if you let me, and tuck you into sleep at night, like I used to. Can we at least be friends, if we can't be lovers?" He also referenced E.C.'s "Stalin-esque statements that [Mr. Cave is] beating up LSU security guards and letting 12 year olds driv[e] cars on the interstate[.]"

(4) On April 6, 2017, Mr. Cave sent a lengthy message to Mrs. Cave on OFW in which he called her "vindictive, revengeful, and feeble-minded[,]" as well as "spiteful" and "inconsiderate" for allowing the

18

children to go to her parents' on Mr. Cave's weekend to have the children. He also stated that she had a "guilty conscience" for "abandoning [her] husband who had brain damage[.]"

The following occurred after April 12, 2017, which is when the petition for protection from abuse was filed, and when the first TRO was issued:

(1) On Easter Sunday, April 16, 2017, Mr. Cave went to Mrs. Cave's brother's house in Houma, Louisiana, where Mrs. Cave and the children were staying for the holiday, and left Easter baskets for the children and a card for L.C. The card included a handwritten message from Mr. Cave in which he stated that he had been "blasted with a wrongful TRO," and stated that Mrs. Cave's attorneys' "lies will be exposed very soon."

(2) On May 10, 2017, at L.C.'s high school senior class ring ceremony, Mr. Cave gave L.C. a card which told him they "will be together soon," and that Mr. Cave just has "to convince the good judge, Judge Day, or the good ones at the 1st Circuit[.]"

(3) For Mother's Day 2017, Mr. Cave purchased the children gifts to give to Mrs. Cave and bought Mrs. Cave a Mother's Day card from the family's dog.

(4) On several occasions in June 2017, Mr. Cave continued to text L.C. in violation of the TRO.

(5) On July 14, 2017 and July 15, 2017, Mr. Cave sent text messages to Mrs. Cave in violation of the TRO.

6) Mr. Cave also continued to copy Mrs. Cave on emails sent to her attorneys.

Upon careful review of the entirety of the record, we find that the trial court did not abuse its discretion in granting the July 21, 2017 protective order. Mr. Cave continued to contact Mrs. Cave and the children despite the TROs in place. The sheer volume of the messages sent by Mr. Cave to Mrs. Cave, as well as the children, along with the content of these messages, would cause a reasonable person to feel alarmed or to suffer emotional distress. See La. R.S. 14:40.2 and La. R.S. 14:40.3; see also Lepine v. Lepine, 17-45 (La. App. 5 Cir. 9/15/17); 223 So.3d 666, 675.

Mr. Cave argues that his position is supported by Coy v. Coy, 46,655 (La. App. 2 Cir. 7/13/11); 69 So.3d 1270. In that case, the second circuit reversed the

trial court's grant of a protective order when no allegations of physical abuse were made and the defendant made an excessive amount of telephone calls to the plaintiff concerning their child. *Coy*, 69 So.3d at 1273. We find *Coy* to be distinguishable. Although some of the messages sent by Mr. Cave pertained to the children, many of the messages were attempts to reconcile with Mrs. Cave or provide her with unwarranted legal advice regarding the ongoing matter between them. There were also messages which levied insults against Mrs. Cave and threatened additional legal action. We also note that the defendant in *Coy*'s actions were limited to text messages and phone calls, while Mr. Cave traveled to Mrs. Cave's brother's home in Houma, Louisiana after the TRO was filed. Accordingly, based on the totality of the record, we find no abuse of discretion in the trial court's granting of the July 21, 2017 protective order. See *Head v. Robichaux*, 2018-0366 (La. App. 1 Cir. 11/2/18); 265 So.3d 813, 819. This assignment of error lacks merit.

Assignment of Error #2

In his second assignment of error, Mr. Cave argues that the trial court committed manifest error in issuing the July 21, 2017 protective order because it failed to adhere to procedural time limits in the conversion of an ex parte, "no notice" TRO.

Louisiana Code of Civil Procedure article 3612 states, "[t]here shall be no appeal from an order relating to a temporary restraining order." This prohibition applies to TROs granted under the Domestic Abuse Statute, La. R.S. 46:2135. See *Lepine*, 223 So.3d at 672. In the event a party is aggrieved by the granting of a TRO, that party may seek review by way of an application for supervisory writs to the Court of Appeal. *Lepine*, 223 So.3d at 672; see also *Harper v. Harper*, 00-1425 (La. App. 5 Cir. 1/30/01); 777 So.2d 1275, 1278. Our review of the record indicates that Mr. Cave did not do so. Based on the posture of this case, the

challenged TRO has lapsed and has been rendered moot by the issuance of the July 21, 2017 protective order. Thus, any issues regarding the propriety of the TRO are moot. See *Lepine*, 223 So.3d at 666; see also *Harper*, 777 So.2d at 1278. This assignment of error lacks merit.

Assignment of Error #3

In his third assignment of error, Mr. Cave argues that the trial court committed manifest error in issuing the July 21, 2017 protective order when it failed to order independent counsel on behalf of the minor children, in violation of La. R.S. 9:345. Mr. Cave asserts that it was an impermissible conflict of interest for one spouse to represent the minor children against the other spouse.

Louisiana Revised Statutes 9:345 provides in pertinent part:

A. In any child custody or visitation proceeding, the court, upon its own motion, upon motion of any parent or party, or upon motion of the child, may appoint an attorney to represent the child if, after a contradictory hearing, the court determines such appointment would be in the best interest of the child. (Emphasis added.)

As noted by Mrs. Cave, no party filed any motion or orally requested a hearing pursuant to La. R.S. 9:345. Further, the language of La. R.S. 9:345(A) is permissive, not mandatory. See La. R.S 1:3 ("The word 'shall' is mandatory and the word 'may' is permissive"); see also *Sanchez v. Georgia Gulf Corp.*, 2002-1617 (La. App. 1 Cir. 8/13/03); 853 So.2d 697, 704. Accordingly, we find that the trial court did not violate La. R.S. 9:345 by failing to appoint an attorney to represent the child at the protective order stage of these proceedings. This assignment of error lacks merit.

Assignments of Error #4, #5, and #6

In his fourth, fifth, and sixth assignments of error, Mr. Cave argues that the trial court was manifestly erroneous in (1) finding him in contempt of court without a hearing; (2) holding him in contempt for proffering a treating physician's report; and (3) sentencing him to thirty days in jail.

21

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive. La. Code Civ. P. art. 221. A direct contempt of court includes one committed in the immediate view and presence of the court and of which it has personal knowledge. Acts constituting direct contempt of court include contumacious, insolent, or disorderly behavior toward the judge, or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority. La. Code Civ. P. art. 222.

It is a well-established rule of law that a judgment holding a party in direct contempt of court is not reviewable by appeal, but is subject to review via application for supervisory writs. *Mill Creek Homeowners Ass'n Inc. v. Manuel,* 2004-1386 (La. App. 1 Cir. 6/10/05); 916 So.2d 271, 272 n.1; see also *Pittman Const. Co., Inc. v. Pittman,* 96-1079, 96-1498 (La. App. 4 Cir. 3/12/97); 691 So.2d 268, 269, writ denied, 97-0960 (La. 5/16/97); 692 So.2d 803 ("This rule is applicable to situations where, during the course of a civil proceeding, a party to that proceeding is held in contempt"). Although Mr. Cave filed a motion for stay order on April 3, 2017, requesting to stay the proceedings due to his intent to seek supervisory writs of review regarding the trial court's finding him in contempt, this motion was denied as untimely.[15] Accordingly, because Mr. Cave did not timely file an application for supervisory writs regarding the trial court's finding him in direct contempt, the contempt ruling is not reviewable.[16] These assignments of error lack merit.

---

[15] An application for supervisory writs must be filed within thirty days of the notice of judgment as provided for in La. Code Civ. P. art. 1914. *Nationstar Mortgage, LLC v. Welborn,* 2018-1734 (La. App. 1 Cir. 4/5/19); 2019 WL 1546857, at *1 (unpublished); see also Rule 4-3, Uniform Rules of Louisiana Courts of Appeal.

[16] On April 24, 2017, Mr. Cave filed a motion and order of appeal and motion and order for stay of the trial court's February 23, 2017 contempt ruling. However, as stated above, a judgment of direct contempt is not reviewable by appeal. See *Mill Creek Homeowners Ass'n Inc.,* 916 So.2d at 272 n.1

<u>Assignment of Error #7</u>

In his seventh assignment of error, Mr. Cave asserts that Judge Day manifestly erred by not timely self-recusing following the February 23, 2017 contempt ruling, its corresponding punishment of Mr. Cave for contempt, and Mr. Cave's filing of a motion for recusal on April 3, 2017. A hearing on the motion for recusal was held before Judge Baker on April 7, 2017. On May 9, 2017, Judge Baker signed a judgment denying Mr. Cave's April 3, 2017 motion to recuse Judge Day.

A judge of any court shall be recused when he or she is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he or she would be unable to conduct fair and impartial proceedings. La. Code Civ. P. art. 151(A)(4). A judge is presumed to be impartial. *City of Baton Rouge v. Douglas*, 2016-0655 (La. App. 1 Cir. 4/12/17); 218 So.3d 158, 166. The grounds for recusal enumerated in La. Code Civ. P. art 151 are exclusive and do not include a "substantial appearance of the possibility of bias" or even a "mere appearance of impropriety" as causes for removing a judge from presiding over a given action. Louisiana Code of Civil Procedure article 151 requires a finding of actual bias or prejudice, which must be of a substantial nature and based on more than conclusory allegations. *Slaughter v. Board of Supervisors of Southern University and Agricultural and Mechanical College*, 2010-1114 (La. App. 1 Cir. 8/2/11); 76 So.3d 465, 471.

Louisiana Code of Civil Procedure article 154 provides the procedure for recusation, stating:

> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to

judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.

In the case before us, we find that Mr. Cave's recusal request is largely premised on disagreements over rulings as opposed to actual documentation of substantial bias. See *Frierson v. Frierson*, 2014-0064 (La. App. 4 Cir. 7/2/14); 2014 WL 3045068, at *11 (unpublished). For example, Mr. Cave notes that he "has made what he feels are appropriate evidentiary objections, yet has . . . won only a very few times[.]" Adverse rulings alone do not show bias or prejudice. *Earles v. Ahlstedt*, 591 So.2d 741, 746 (La. App. 1 Cir. 1991).

Additionally, Mr. Cave argued throughout his motion for recusal that Judge Day should not have found him in contempt on February 23, 2017. Although we will not review that finding of direct contempt for the reasons expressed above, the portion of the February 23, 2017 transcript contained within the record shows that Mr. Cave repeatedly interrupted and argued with Judge Day.

Mr. Cave also asserted in his motion for recusal that Judge Day had "repeatedly demonstrated an inability to be fair, unbiased, and impartial." Following our review of the record, we cannot conclude the same. Judge Day allowed each party adequate time to present their arguments, her rulings were based upon the evidence put before her, and her proceedings and rulings were consistently fair. This assignment of error lacks merit.

## 2020 CU 0550

Mr. Cave's Assignment of Error #1

Mr. Cave's first assignment of error in this appeal is the same as his first assignment of error in his other appeal, 2020 CA 0240. For the same reasons provided above, this assignment of error lacks merit.

24

Mr. Cave's Assignment of Error #2

In his second assignment of error, Mr. Cave argues that the trial court manifestly erred in renewing the expired protective order on August 28, 2019. He argues that the exception of res judicata, which "is specifically pled herein[,]" prevents issues from readjudication and that the trial court previously denied Mrs. Cave's rule to extend the provisions of the July 21, 2017 protective order. He further notes that the "renewed" protective order applies to two children who are now above the age of majority (L.C. and A.C.) and that the trial court has no jurisdiction over someone above the age of majority.

The history of the protective order is as follows. The initial protective order was issued on July 21, 2017. Mrs. Cave, individually and on behalf of the two remaining minor children, and L.C. filed a joint motion to modify the protective order on August 10, 2018, seeking to update the addresses Mr. Cave must stay at least 100 yards away from. The same parties filed a joint supplemental and amended motion to modify the protective order on November 5, 2018, seeking to add Mrs. Cave's and L.C.'s places of employment as prohibited places. The motions were granted in open court on January 3, 2019.

On January 8, 2019, Mrs. Cave filed a rule to extend the non-permanent provisions of the July 21, 2017 protective order, which was set to expire on January 21, 2019. On January 22, 2019, in open court, the trial court denied Mrs. Cave's January 8, 2019 rule to extend provisions of the July 21, 2017 protective order until trial on this subject matter. Following trial, the trial court issued another modified version of the protective order on August 28, 2019. In its October 15, 2019 judgment, the trial court stated, "those portions of the July 21, 2017 Protective Order, as amended January 3, 2019, pertaining to custody shall be modified for a period of eighteen (18) months, pursuant to the 'Louisiana Uniform Abuse Prevention Order' signed and filed into the record August 28, 2019."

25

We reiterate that the July 21, 2017 protective order's permanent injunctions, which order Mr. Cave not to harass, contact, or go within 100 yards of the protected persons, are orders that do not expire. Further, as to the modification of the effective period of the rest of the protective order, La. R.S. 46:2136 states that "[o]n the motion of any party, after a hearing, the court may modify the effective period of a protective order pursuant to [La. R.S. 46:2136(F)]."[17]

Regarding Mr. Cave's res judicata argument, the issue of the modification of the protective order was not adjudicated. The trial court initially denied Mrs. Cave's rule to extend the (non-permanent) provisions of the July 21, 2017 protective order, but this was done pending trial on the matter. Trial was held and the trial court then issued the most recent modified protective order.

As to whether the trial court has jurisdiction over L.C. and A.C., who are both above the age of majority, L.C. was represented by his own attorney and joined Mrs. Cave's joint motion to modify the July 21, 2017 protective order and joint supplemental and amended motion to modify the July 21, 2017 protective order. Although A.C. is now over eighteen, she turned eighteen after the judgment at issue was rendered. While the proceedings were ongoing and while A.C. was under the age of majority, motions on her (and E.C.'s) behalf were filed by her mother.

This assignment of error lacks merit.

---

[17] Louisiana Revised Statutes 46:2136(F) states in pertinent part:

> F. (1) Except as provided in Paragraph (2) of this Subsection, any final protective order or approved consent agreement shall be for a fixed period of time, not to exceed eighteen months, and may be extended by the court, after a contradictory hearing, in its discretion. Such protective order or extension thereof shall be subject to a devolutive appeal only.

> (2)(a) For any protective order granted by the court which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in [La.] R.S. 46:2135(A)(1), the court may grant the order to be effective for an indefinite period of time as provided by the provisions of this Paragraph on its own motion or by motion of the petitioner. The indefinite period shall be limited to the portion of the protective order which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in [La.] R.S. 46:2135(A)(1).

Mr. Cave's Assignment of Error #3

In his third assignment of error, Mr. Cave argues that the trial court erred in sequestering the parties and denied his 5th and 14th Amendment due process rights by not allowing him to cross-examine witnesses at trial. Mr. Cave is referring specifically to the trial court's decision to allow the then-minor children, A.C. and E.C., to testify outside of the presence of the parties and their attorneys. The only attorney present when A.C. and E.C. testified was Nicole Templet, the attorney appointed to represent the minor children. In lieu of their own examination, the trial court allowed the parties to submit a reasonable amount of relevant suggested questions for the trial court to ask the minor children and allowed the parties and attorneys to listen to the children's live testimony.

Mr. Cave cites *Fuge v. Uiterwyk*, 94-1815 (La. App. 4 Cir. 3/29/95); 653 So.2d 707, in support of his argument. According to Mr. Cave, the court in *Fuge* held that a parent's right to due process was denied by the trial court's sequestration of parents during their children's testimony. *Fuge*, 653 So.3d at 712. The court in *Fuge* pointed out that the children were honor students in high school that the trial court had found to be "bright and capable young men" and had no need for protection from the mere presence of their parents to balance against the mother's due process rights. *Id.*

However, *Fuge* did not involve domestic abuse and specifically noted that the children did not need protection from the presence of their parents. *Fuge*, 653 So.3d at 712. The facts in *Fuge* are in stark contrast to the facts of the present case, in which a protective order was issued to keep Mr. Cave away from the children because of his continued harassment of Mrs. Cave and the children.

Louisiana Code of Evidence article 611(A) states that the court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . [p]rotect witnesses from harassment or undue

embarrassment." Considering that the protective order was granted to prevent the harassment of protected persons, including A.C. and E.C., we find that the trial court reasonably exercised its control over the mode of interrogating A.C. and E.C. As noted in oral reasons, the trial court's sequestration of the parties and attorneys was done to protect and ensure the best interests of the children, while still allowing them to testify. Allowing Mr. Cave to question the minor children directly, after years of litigation pertaining to Mr. Cave's harassment of Mrs. Cave and the children, would not have been in their best interests. We find that allowing the attorneys to submit questions for the judge to ask the minor children was sufficient.

We further note that the record contains no evidence of Mr. Cave having timely objected to the manner in which the children were questioned. See La. Code Ev. art. 614(C) ("Objections to the calling of witnesses by the court or to questioning of witnesses by it may be made at the time or at the next available opportunity[.]" The failure to object to this testimony thus precludes Mr. Cave from raising the issue on appeal. See Rodriguez v. Claassen, 2016-0610 (La. App. 4 Cir. 12/21/16); 207 So.3d 490, 494-95; see also Lapeyrouse v. Barbaree, 2002-0086 (La. App. 1 Cir. 12/20/02); 836 So.2d 417, 422. This assignment of error lacks merit.

Mr. Cave's Assignment of Error #4

In his fourth assignment of error, Mr. Cave argues that the trial court's sequestration of the parties, which denied him his right to participate and be present in the same manner as court-appointed counsel, violated La. R.S. 9:345. Louisiana Revised Statutes 9:345(E) states that an attorney appointed to represent a child in custody or visitation proceedings "shall have the right to make any motion and participate in the custody or visitation hearing to the same extent as authorized for either parent." Mr. Cave argues that the parties were not afforded their rights to

cross-examine the witnesses and were not allowed to be present or participate in the same manner in the hearing and to the same extent as counsel for the minor children. However, as stated above, the manner in which the children were questioned was implemented in order to protect the children's best interests and the parties were allowed to submit questions. Although the children's court-appointed counsel was allowed to be present, Mrs. Cave and her attorneys, like Mr. Cave, were not. We also reiterate that Mr. Cave did not timely object to the manner of questioning. Accordingly, this assignment of error lacks merit.

Mr. Cave's Assignment of Error #5

In his fifth assignment of error, Mr. Cave argues that the trial court manifestly erred in modifying Mr. Cave's joint custody to sole custody in favor of Mrs. Cave, and in awarding no visitation to Mr. Cave, where the best interest of the child factors weigh heavily in favor of joint custody, increased visitation, and a set visitation schedule. Mrs. Cave argues that Mr. Cave's actions constitute domestic abuse, and that the protective order, especially given the permanent nature of same, prevents Mr. Cave from being awarded joint custody and visitation because such would not be in the children's best interests and would be barred by La. R.S. 9:341 and La. R.S. 9:364.

The trial court is vested with broad discretion in deciding child custody cases. Because of the trial court's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. *Randazzo v. Prosperie*, 2013-0704 (La. App. 1 Cir. 9/13/13); 135 So.3d 22, 25.

Louisiana Revised Statutes 9:341(A) states in pertinent part:

29

A. Whenever the court finds by a preponderance of the evidence that a parent has subjected any of his or her children or stepchildren to family violence, as defined in [La.] R.S. 9:362, or domestic abuse, as defined in [La.] R.S. 46:2132, has subjected any other household member, as defined in [La.] R.S. 46:2132, to a history of family violence as defined in [La.] R.S. 9:364(A), or has willingly permitted such abuse to any of his or her children or stepchildren despite having the ability to prevent it, the court shall allow only supervised visitation between the abusive parent and the abused child or children until such parent proves by a preponderance of the evidence at a contradictory hearing that the abusive parent has successfully completed a court-monitored domestic abuse intervention program, as defined in [La.] R.S. 9:362, since the last incident of domestic violence or family abuse. (Emphasis added.)

Louisiana Revised Statutes 9:364 states in relevant part:

A. There is created a presumption that no parent who has a history of perpetrating family violence, as defined in [La.] R.S. 9:362, or domestic abuse, as defined in [La.] R.S. 46:2132, or has subjected any of his or her children, stepchildren, or any household member, as defined in [La.] R.S. 46:2132, to sexual abuse, as defined in R.S. 14:403, or has willingly permitted another to abuse any of his children or stepchildren, despite having the ability to prevent the abuse, shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:

(1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in [La.] R.S. 9:362, or a treatment program designed for sexual abusers, after the last instance of abuse.

(2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in [La.] R.S. 40:964.

(3) The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children. (Emphasis added.)

Because Mr. Cave's actions constituted domestic abuse as defined by La. R.S. 46:2132, we find that La. R.S. 9:341 and La. R.S. 9:364 are applicable.

We first address Mr. Cave's argument that the trial court erred in modifying Mr. Cave's joint custody to sole custody in favor of Mrs. Cave. Louisiana Revised

Statutes 9:364 states that there is a presumption that no parent who has a history of perpetrating domestic abuse shall be awarded sole or joint custody of children. The presumption shall be overcome only if the court finds by a preponderance of the evidence all of the following: (1) the perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in La. R.S. 9:362; (2) the perpetrating parent is not abusing alcohol or illegal substances; and (3) the best interest of the children, considering the factors listed in La. Civ. Code art. 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the children.

Thus, La. R.S. 9:364 requires that Mr. Cave prove by a preponderance of the evidence at a contradictory hearing that he has successfully completed a court-monitored domestic abuse intervention program, as defined in in La. R.S. 9:362, since the last incident of domestic violence. The record lacks any indication that Mr. Cave participated in any court-monitored domestic abuse intervention program as of the time of the trial court's judgment regarding custody. Louisiana Revised Statutes 9:364 also requires that Mr. Cave not be abusing alcohol or illegal substances, but as of the time of the trial court's judgment regarding custody, he admitted that he was still drinking alcohol despite having a history of abusing alcohol. Considering the foregoing, we conclude that the trial court did not abuse its discretion in awarding sole custody to Mrs. Cave.

We next determine whether Mr. Cave should be awarded visitation. Louisiana Revised Statutes 9:364(E) states, "If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to [La.] R.S. 9:341." Louisiana Revised Statutes 9:341(A) allows only supervised visitation between the abusive parent and the abused child or children until the abusive parent proves by a preponderance of

31

the evidence at a contradictory hearing that he has successfully completed a court-monitored domestic abuse intervention program, as defined in in La. R.S. 9:362, since the last incident of domestic violence.   As stated above, as of the date of the custody determination, there is nothing in the record to suggest that Mr. Cave had participated in any court-monitored domestic abuse program at the time of the custody determination.

Louisiana Revised Statutes 9:341(A) further states:

At the [contradictory] hearing, the court shall consider evidence of the abusive parent's current mental health condition and the possibility the abusive parent will again subject his children, stepchildren, or other household member to family violence or domestic abuse, or willingly permit such abuse to any of his or her children or stepchildren despite having the ability to prevent it. The court shall order visitation only if the abusive parent proves by a preponderance of the evidence that visitation would be in the best interest of the child, considering the factors in Civil Code Article 134, and would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child, including continued supervision. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent. (Emphasis added.)

Louisiana Civil Code article 134 provides:

A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

B. In cases involving a history of committing family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, including sexual abuse, as defined in R.S. 14:403, whether or not a party has sought relief under any applicable law, the court shall determine an award of custody or visitation in accordance with R.S. 9:341 and 364. The court may only find a history of committing family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

We will consider the best interest factors as they relate to E.C., the only remaining minor child, as well as whether visitation would cause physical, emotional, or psychological damage to E.C.

The court shall consider all relevant factors in determining the best interest of the child. Every child custody case must be viewed in light of its own particular set of facts and circumstances; however, we note that the factors listed in Article 134 are not exclusive. *Trahan v. Kingrey*, 2011-1900 (La. App. 1 Cir. 5/4/12); 98

So.3d 347, 352, *writ denied,* 2012-1586 (La. 8/1/12); 92 So.3d 351. The court is not bound to make a mechanical evaluation of all the statutory factors, but should decide each case on its own facts in light of those factors. *Foshee v. Foshee,* 2012-1358 (La. App. 4 Cir. 8/23/13); 123 So.3d 817, 821; see also *Lawson v. Lawson,* 48,296 (La. App. 2 Cir. 7/24/13); 121 So.3d 769, 773-74.

Several of the best interest of the child factors are especially relevant here. For instance, the first factor is the potential for the child to be abused, as defined by La. Ch. Code art. 603. Louisiana Children's Code article 603(2)(a) defines abuse as "[t]he infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person." E.C.'s therapist testified that E.C. suffers from significant anxiety and that he has reported concern about unexpected interactions with his father and feared that his father would show up to E.C.'s therapy sessions. This anxiety is clearly a result of Mr. Cave's behavior.

Regarding the second factor, which examines the love, affection, and other emotional ties between each party and the child, E.C.'s testimony makes it clear that he does not feel love towards his father. On the contrary, he fears for his safety and labeled his father as dangerous and unsafe to be around. He does not want to speak to his father or see his father at all.

The eighth factor pertains to the history of substance abuse, violence, or criminal activity. Our determinations regarding Mr. Cave's history of domestic violence towards Mrs. Cave and the children are discussed extensively above. Additionally, Mr. Cave was still using alcohol as of the time of trial and has given alcohol to his children. E.C. testified that Mr. Cave would drink and drive while E.C. was in the car. Mr. Cave has also abused cocaine in the past.

We also find the eleventh factor, the reasonable preference of the child, to be of particular importance. E.C. was in ninth grade when he testified at trial. He has made it very clear that he is afraid of his father and does not want to see or speak to him. E.C. further testified that he does not want to participate in therapy with his father.

Considering the circumstances and E.C.'s testimony, we find that any visitation forced upon E.C. would cause severe emotional and psychological damage to E.C. E.C.'s therapist testified that E.C. would be devastated if forced to see or interact with his father, and that any forced interactions between E.C. and Mr. Cave would backfire.

For these reasons, we find that the trial court did not abuse its discretion in denying visitation to Mr. Cave, nor did the trial court abuse its discretion in awarding sole custody to Mrs. Cave. This assignment of error lacks merit.

Dr. Cave's Assignment of Error

In her sole assignment of error, Dr. Cave argues that the trial court abused its discretion in denying her paternal grandparent visitation rights to see her grandchildren where the factual record shows that it is in the best interest of the minor children to encourage, support, and maintain the relationships between Dr. Cave and the grandchildren, particularly where there may exist extraordinary circumstances under La. R.S. 9:344(D).

Mrs. Cave asserts that this matter is governed by La. C.C. art. 136, not La. R.S. 9:344(D). Louisiana Civil Code art. 136 provides in pertinent part:

> B. [T]he following persons may be granted visitation if the parents of the child are not married or cohabitating with a person in the manner of married persons or if the parents of the child have filed a petition for divorce:
>
> (1) A grandparent if the court finds that it is in the best interest of the child.
>
> . . .

D. In determining the best interest of the child under Subparagraph (B)(1) . . . of this Article, the court shall consider only the following factors:

(1) A parent's fundamental constitutional right to make decisions concerning the care, custody, and control of their own children and the traditional presumption that a fit parent will act in the best interest of their children.

(2) The length and quality of the prior relationship between the child and the relative.

(3) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.

(4) The preference of the child if he is determined to be of sufficient maturity to express a preference.

(5) The mental and physical health of the child and the relative.

Louisiana Revised Statutes 9:344(D) provides:

D. If the parents of a minor child of the marriage have lived apart for a period of six months, in extraordinary circumstances, the grandparents or siblings of the child may have reasonable visitation rights to the child during his minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child. In determining the best interest of the child the court shall consider the same factors contained in Civil Code Article 136(D). Extraordinary circumstances shall include a determination by a court that a parent is abusing a controlled dangerous substance.

Because Mr. Cave and Mrs. Cave divorced on March 16, 2016, we find that La. Civ. Code art. 136 applies. However, we note that in either scenario, we must apply the best interest factors contained in La. Civ. Code art. 136(D).

When granting or modifying visitation to a nonparent, the trial court must exercise care not to apply either La. Civ. Code 136 or La. R.S. 9:344 in a vacuum. Instead, the trial court must balance these state provisions against a fit parent's constitutionally protected fundamental right of privacy in child rearing, and remember that any rights of nonparents are ancillary to that of a fit parent. *Wood v. Wood*, 2002-0860 (La. App. 1 Cir. 9/27/02); 835 So.2d 568, 573, *writ denied*, 2002-2514 (La. 3/28/03); 840 So.2d 565, citing *Troxel v. Granville*, 530 U.S. 57,

65-73, 120 S.Ct. 2054, 2060-64, 147 L.Ed.2d 49 (2000). The burden of proof is properly placed on the mover, the nonparent, to meet the legislative best interest requirement. It is the court's responsibility to balance state requirements with constitutional protections. In considering the best interest of the child, the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally. Visitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law. *Wood*, 835 So.2d at 573.

Thus, we consider Mrs. Cave's constitutional right to make decisions concerning the care, custody, and control of E.C. and the presumption that she will act in the best interest of E.C., as well as the length and quality of E.C.'s prior relationship with Dr. Cave, whether E.C. needs guidance which can best be provided by Dr. Cave, E.C.'s preference, and the mental and physical health of E.C. and Dr. Cave.

From our review of the record, it is clear that Mrs. Cave has consistently acted in the best interest of her children. Regarding Dr. Cave, Mrs. Cave has encouraged E.C. to speak to her, but he has chosen not to.

We must also take E.C.'s preferences into account. E.C. testified that he does not want to see Dr. Cave. He believes that she is only seeking visitation so that she can give the children to Mr. Cave. E.C. is afraid of his grandmother and believes that "if [Mr. Cave] says something," Dr. Cave will "do it."

E.C. testified that prior to the divorce, Dr. Cave was "fine." However, E.C. also testified that Dr. Cave is "way too biased towards [Mr. Cave], and will do anything for him, and she doesn't really care who gets in the way[.]" He stated that whenever Dr. Cave was supposed to supervise visitation, Dr. Cave would not care what the judge said and would leave the children alone with Mr. Cave.

Considering the factors provided above, we find that Mrs. Cave's constitutional rights concerning the care, custody, and control of E.C. and the presumption that Mrs. Cave will act in E.C.'s best interest outweigh the other factors to be considered. Additionally, E.C. has made his preference clear; he does not wish to see Dr. Cave. Considering the foregoing, we find that the trial court did not abuse its discretion in denying grandparent visitation rights. This assignment of error lacks merit.

## Appellees' Answers to the Appeals

Mrs. Cave, L.C., and A.C. and E.C. (through their appointed attorney) have filed answers to both appeals, averring that these appeals are frivolous and requesting the appeals be dismissed in accordance with Uniform Rules of Courts of Appeal Rule 2-19. Their answers also seek reasonable court costs and attorneys' fees incurred for the defense of same.

Uniform Rules of Louisiana Courts of Appeal Rule 2-19 provides that this court may award damages for frivolous appeal in civil cases as provided by law. La. Code Civ. P. art. 2164 states:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

This provision is penal in nature and is to be strictly construed. Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing. Appeals are favored and appellate courts are reluctant to impose damages for

38

frivolous appeals. *Thomas v. Robinson*, 15-82 (La. App. 5 Cir. 9/23/15); 176 So.3d 698, 703-04; see also *Cajundome Com'n v. Meche*, 2008-1057 (La. App. 3 Cir. 2/4/09); 3 So.3d 607, 611. Our review of the record does not show that these appeals were taken solely for delay or that Mr. Cave and Dr. Cave did not seriously believe they were entitled to relief. See *Thomas*, 176 So.3d at 704. Accordingly, we find that the appeals are not frivolous and deny the answers to the appeals.

## DECREE

For the above and foregoing reasons, the Nineteenth Judicial District Court's rulings at issue, including the Nineteenth Judicial District Court's granting of a protective order against Michael Cave and subsequent modification of joint custody to sole custody and denial of visitation rights, as well as the Nineteenth Judicial District Court's denial of grandparent visitation rights, are affirmed. Costs of the first appeal, 2020 CA 0240, are assessed to Appellant, Michael Cave. Costs of the second appeal, 2020 CU 0550, are split evenly between Appellant, Michael Cave, and Appellant, Dr. Stephanie Cave. Mrs. Cave, L.C., and A.C. and E.C.'s answers to the appeals are denied.

**AFFIRMED. ANSWERS TO APPEALS DENIED.**